HEITSCH v HAMPTON

Docket No. 95330. Submitted May 14, 1987, at Lansing. Decided April 5, 1988. Leave to appeal applied for.

    William J. Heitsch died as a result of injuries suffered when Charles E. Hampton and Darrin C. Ortega broke into his home at night and beat him about the head and torso. Joseph F. Heitsch and William C. Heitsch, as personal representatives of the estate of William J. Heitsch, brought a wrongful death action in Oakland Circuit Court against Hampton and Ortega and against Michigan Bell Telephone Company. With respect to the claim against Michigan Bell, plaintiffs alleged that Michigan Bell was negligent in wrongfully disconnecting decedent's telephone line from service five days prior to the crime and in failing to reconnect decedent's telephone line and that Michigan Bell's negligence was a proximate cause of decedent's death since the lack of telephone service left decedent without a means to summons assistance either before or after the assault. Following discovery, Michigan Bell moved for summary disposition, arguing that, while it was negligent in disconnecting decedent's telephone line from service, the disconnected telephone line was not a proximate cause of decedent's death. The trial court, Robert L. Templin, J., granted Michigan Bell's motion, ruling that the criminal conduct of Hampton and Ortega was a superseding cause which caused Michigan Bell's negligence in disconnecting decedent's telephone line from service not to be a proximate cause of decedent's death. Plaintiffs appealed.

    The Court of Appeals *held:*

    Defendant Michigan Bell, being a public utility, should not be held liable for injuries to a subscriber which come as a result of a criminal assault in the subscriber's home where Michigan Bell has as a result of negligence wrongfully disconnected the subscriber's telephone line from service, since, absent extraordinary circumstances and special knowledge by a telephone

REFERENCES

Am Jur 2d, Telecommunications §§ 41, 42, 61.
Liability of telephone company to subscriber for failure or interruption of service. 67 ALR3d 76.

company that a subscriber has a special need for uninterrupted service, the telephone company cannot reasonably be held to foresee a criminal assault against its subscriber.

Affirmed.

PUBLIC UTILITIES — TELEPHONE SERVICE — NEGLIGENCE — DUTY OF CARE — FORESEEABILITY.

A public utility, absent extraordinary circumstances, cannot be held to expect that one of its customers will be the victim of criminal conduct of others; accordingly a telephone company, absent some knowledge of a subscriber's extraordinary need for uninterrupted service, cannot be held liable for injuries suffered by the subscriber in his home at the hands of criminals where it is alleged that the injuries were in part the result of the lack of telephone service caused by the phone company's negligent failure to provide telephone service.

*Darden, Neef & Heitsch* (by *Allan Neef*), for plaintiffs.

*Brian J. Jordan,* for Michigan Bell Telephone Company.

Before: MacKENZIE, P.J., and J. H. GILLIS and J. P. SWALLOW,* JJ.

MacKENZIE, P.J. Plaintiffs appeal as of right from an order granting summary disposition in favor of defendant Michigan Bell Telephone Company (hereinafter defendant). We affirm.

This is a wrongful death action. During the night of November 28, 1982, Charles Hampton and Darrin Ortega broke into the home of plaintiffs' decedent, William J. Heitsch. Decedent was ninety years old, in reasonably good health, and lived alone. Approximately an hour before the break-in, Hampton and Ortega broke a window in decedent's bedroom, according to plaintiffs, to see if anyone would respond. During the break-in, the two men beat decedent about the head and torso

---

* Circuit judge, sitting on the Court of Appeals by assignment.

with a nightstick. After the attack, decedent dragged himself to the kitchen, where he bled to death. Hampton and Ortega were later convicted of murder and manslaughter, respectively.

Five days prior to the break-in, defendant disconnected decedent's telephone line from service without notice or explanation. Subsequent investigation revealed that the disconnection occurred when defendant received an order to remove service to the same number, but in a different area code. When decedent's telephone line was disconnected a "default" recording was automatically placed on the line, informing callers: "The number you have reached is being checked for trouble. Please try your call again later." While decedent and his family were aware that his telephone service was out prior to November 28, plaintiffs alleged that the "default" recording led them to believe that defendant was taking steps to restore service. Thus, they did not contact defendant about the lack of service until after decedent's death.

The only telephone in decedent's house was a wall-mount unit located in the kitchen, where he died. Plaintiffs alleged that defendant was negligent in wrongfully disconnecting and failing to reconnect decedent's telephone line from service and that this negligence was a proximate cause of decedent's death since the lack of telephone service left him without means to summon assistance before or after the assault.

Following discovery, defendant moved for summary disposition pursuant to MCR 2.116(C)(10). For purposes of the motion, defendant admitted its negligence in disconnecting decedent's telephone line from service. Defendant contended, however, that the disconnected telephone line was not a proximate cause of decedent's death. The trial

court agreed, ruling: "Hampton and Ortega's criminal conduct was the superseding cause of the harm to decedent and therefore Michigan Bell's alleged negligent act of disconnecting decedent's telephone is not the proximate cause of decedent's death."

The sole issue before the trial court was whether defendant's conduct was a proximate cause of decedent's death, or whether his death was brought about by an intervening force—the assault by Hampton and Ortega—for which defendant is not responsible. An intervening cause is one which comes into active operation in producing harm to another after the negligence of the defendant. See Prosser & Keeton, Torts (5th ed), § 44, p 301; 2 Restatement Torts, 2d, § 441. If this intervention is a superseding cause, the defendant is relieved from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the injury. See 2 Restatement Torts, 2d, § 440, Comment b, p 465.

2 Restatement Torts, 2d, § 448, pp 480-481 provides:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.
>
>      \*   \*   \*
>
> Comment:
>
> a. The rule stated in this Section applies when the actor's conduct creates a situation which is

utilized by a third person to inflict intentional harm upon another or provides a temptation to do so to which the third person yields, but the actor has no reason to expect that the third person would so act. Under the rule stated in this Section, the actor is not responsible for the harm thus inflicted merely because the situation which his negligence has created has afforded an opportunity or temptation for its infliction.

The existence or nonexistence of an intervening or superseding cause is largely a matter of policy. As stated in Prosser & Keeton, *supra,* § 44, pp 311-313:

[O]nce the defendant's negligence is established, because injury of some kind was to be anticipated, intervening causes which could not reasonably be foreseen, and which are no normal part of the risk created, may bring about results of an entirely different kind.

It is here at least that the line is drawn to terminate the defendant's responsibility. The courts have exhibited a more or less instinctive feeling that it would be unfair to hold the defendant liable. The virtually unanimous agreement that the liability must be limited to cover only those intervening causes which lie within the scope of the foreseeable risk, or have at least some reasonable connection with it, is based upon a recognition of the fact that the independent causes which may intervene to change the situation created by the defendant are infinite, and that as a practical matter responsibility simply cannot be carried to such lengths.

Accordingly, it has been held that the defendant is not liable for the results of . . . those intentional or criminal acts against which no reasonable standard of care would require the defendant to be on guard: unforeseeable personal attacks upon the plaintiff, destructive meddling with property, and the forgery of a check.

> Almost invariably these cases present no issue of causation, since there is no doubt whatever that the defendant has created the situation acted upon by another force to bring about the result; and to deal with them in terms of "cause" or "proximate cause" is only to avoid the real issue. The question is one of negligence and the extent of the obligation: whether the defendant's responsibility extends to such interventions, which are foreign to the risk the defendant has created. It is best stated as a problem of the scope of the legal obligation to protect the plaintiff against such an intervening cause.

Mindful of these observations, we believe that in the final analysis the real issue in this case is not proximate causation, but whether any duty of reasonable care which defendant may have owed decedent included protecting him from the criminal acts of third parties. We decline to extend defendant's duty that far in light of the degree of control in a utility's relationship with its customers. See *Williams v Cunningham Drug Stores, Inc,* 429 Mich 495; 418 NW2d 381 (1988) (because a merchant cannot control incidence of crime, there is no duty to protect customers from criminal acts of third parties by posting armed security guards). Compare *Johnston v Harris,* 387 Mich 569; 198 NW2d 409 (1972) (in a landlord-tenant relationship, it is foreseeable that tenant would be injured by third party in poorly lighted, unlocked vestibule), and see *Williams, supra,* p 502, n 17. As a matter of policy, we are persuaded that, absent extraordinary circumstances, a public utility such as defendant cannot be held to expect that one of its customers would be the victim of criminal conduct of others. We therefore conclude that, as a matter of law, defendant had no obligation to protect the decedent against the burglary of his home or his assault. Defendant did not know that

decedent was elderly, that he lived alone, or that he lived in a high crime area. Indeed, the fact that decedent apparently did not feel compelled to inquire into his continued lack of phone service suggests that he did not consider himself to be particularly vulnerable without such service. As stated in *Hoyle v Southern Bell Telephone & Telegraph Co,* 474 F Supp 1350, 1355 (WD NC, 1979),

> All subscribers depend on their telephone to summons help, but the Defendant can not be held liable for non repair in every instance. There could be some instances which might imply a presumption of knowledge of an emergency such as if the hospital's telephones were out of order, but that is not the situation in this case.

And as noted by Prosser & Keeton, *supra,* § 33, p 201:

> There is normally much less reason to anticipate acts on the part of others which are malicious and intentionally damaging than those which are merely negligent; and this is all the more true where, as is usually the case, such acts are criminal. Under all ordinary and normal circumstances, in the absence of any reason to expect the contrary, the actor may reasonably proceed upon the assumption that others will obey the criminal law. Under such ordinary circumstances, it is not reasonably to be expected that anyone will hurl a television from an apartment building window, rob and beat up a boy in a public restroom, forge a check, push another man into an excavation, abduct a woman from a parking lot and rape her, hold up a patron in the parking lot of a bank, or shoot a patron in the parking lot of a restaurant. Although such things do occur, as must be known to anyone who reads the daily papers, they are still so unlikely in any particular instance that the

burden of taking continual precautions against them almost always exceeds the apparent risk. [Citations omitted.]

To be sure, decedent's death was senseless and tragic. Nevertheless, absent some knowledge of a subscriber's extraordinary need for uninterrupted service, we cannot make defendant an insurer of the well-being of each of its customers, as plaintiffs would have us do. Accordingly, we affirm the decision of the trial court.

Affirmed.