RINALDO'S CONSTRUCTION CORPORATION v
MICHIGAN BELL TELEPHONE COMPANY

Docket No. 102409. Argued November 13, 1996 (Calendar No. 10).
    Decided March 4, 1997.

Rinaldo's Construction Corporation brought an action in the Macomb
    Circuit Court against the Michigan Bell Telephone Company, alleg-
    ing negligence in the installation and maintenance of its telephone
    service. It later amended its complaint to add counts of res ipsa
    loquitur and wilful misrepresentation. The court, George C. Steeh,
    J., granted the defendant's motion for summary disposition, con-
    cluding that the claims were within the jurisdiction of the Michigan
    Public Service Commission, despite the allegations of negligence. It
    reasoned that there was no cause of action in tort where the par-
    ties' relationship was purely contractual in nature because any
    alleged duties owed were governed by MPSC tariffs. The Court of
    Appeals, HOOD, P.J., and MARILYN KELLY and SAAD, JJ., affirmed in an
    unpublished opinion per curiam (Docket No. 164509). The plaintiff
    appeals.

    In a unanimous opinion by Justice BOYLE, the Supreme Court
    held:

    Although a cause of action in tort against a telephone company
    or a claim that the company has violated the regulatory code or
    tariff may proceed in a court of general jurisdiction, the doctrine of
    primary jurisdiction requires dismissal of the plaintiff's claim
    because it arises solely out of the contractual relationship between
    Michigan Bell and its customer, the plaintiff, and is limited by
    Tariff 7.

    1. The doctrine of primary jurisdiction is a concept of judicial
    deference and discretion. It does not preclude civil litigation, but
    merely suspends court action. A court of general jurisdiction
    should consider the doctrine whenever there is concurrent original
    subject-matter jurisdiction regarding a disputed issue both in a
    court and in an administrative agency. The court should note the
    extent to which the agency's specialized expertise makes it the
    preferable forum for resolving the issue, the need for uniform reso-
    lution of the issue, and the potential that judicial resolution will

have an adverse effect on the agency's performance of its regulatory responsibilities.

2. Causes of action in tort and those alleging that a telephone company has violated MPSC tariffs or regulatory codes are not cases in which the rationale underlying the doctrine of primary jurisdiction usually apply. However, where the claim asserted is essentially a matter already contemplated by the controlling tariffs, and the only issue is the extent to which the tariffs will apply, deferral to the MPSC under the doctrine of primary jurisdiction is proper.

3. Where a customer asserts a cause of action arising purely out of the matters anticipated by the approved tariffs and code, the doctrine of primary jurisdiction requires a court of general jurisdiction to defer to the MPSC. However, a cause of action against a utility company arising in tort and potentially requiring a remedy outside the regulatory scheme or a claim alleging a violation of the MPSC regulatory code or tariffs may proceed in a court of general jurisdiction.

4. In deciding the question of jurisdiction, a court must analyze whether the facts pleaded give rise to a legal duty in tort independent of breach of contract. In this case, while the defendant owed the plaintiff various duties, the duties arose solely out of the contractual relationship between the parties and not from any independent legal obligations supporting a cause of action in tort. Thus, they are matters incident to the regulation of the telephone company within the primary jurisdiction of the MPSC.

Affirmed.

Justice KELLY took no part in the decision of this case.

*Fieger, Fieger & Schwartz, P.C.* (by *Michael Alan Schwartz*), for the plaintiff.

*Albert Calille* and *Brian J. Jordan* for the defendant.

BOYLE, J. We granted leave to appeal to examine the relationship between courts of general jurisdiction and the primary jurisdiction of the Michigan Public Service Commission (MPSC). Specifically, we address the question whether a circuit court may entertain a cause of action against a telephone company alleging negligence, despite the MPSC's primary jurisdiction

over customer claims arising under MPSC tariffs.[1] We also address the applicability of MPSC Tariff 7 to the plaintiff's case.

For the reasons that follow, we hold that, although a cause of action in tort against a telephone company or a claim that the company has violated the regulatory code or tariff may proceed in a court of general jurisdiction, the doctrine of primary jurisdiction requires dismissal of plaintiff's claim because it arises solely out of the contractual relationship between the telephone company and the plaintiff, its customer, and is limited by Tariff 7.

### I. FACTS AND PROCEEDINGS

Plaintiff is a commercial and residential construction company located in Clinton Township. In May, 1991, plaintiff moved its place of business to a new address and requested that defendant Michigan Bell Telephone Company transfer its telephone service to the new address. Upon moving to the new address, plaintiff experienced various problems with its telephone service.[2] Michigan Bell attempted to correct

---

[1] The MPSC is the administrative body charged with the authority to oversee and regulate telephone services and rates. This case arose under the telephone act of 1913, MCL 484.101 *et seq.*; MSA 22.1441 *et seq.*, which was repealed in 1991. The Michigan Telecommunications Act, MCL 484.2101 *et seq.*; MSA 22.1469(101) *et seq.*, now governs the telecommunication industry and confers regulatory authority over the telephone services and rates in a manner similar to the telephone act of 1913. MCL 484.2201; MSA 22.1469(201). The tariffs, filed with and approved by the MPSC, govern the contractual relationship between a telephone company and its business and residential customers.

[2] The record reveals that plaintiff reported on various dates the following types of trouble to Michigan Bell: no dial tone, false busy signals, crossed lines, inability to receive incoming calls, inability to place calls without a calling card, static on the line, ringing at another number, no ringing when calls came in, and low volume.

these problems by testing the line for trouble and by sending out repair personnel. Michigan Bell's records indicate that among the causes for these problems were unauthorized drop lines, underground cable damage, and problems with the plaintiff's own equipment.[3]

In January, 1992, plaintiff filed a complaint in Macomb Circuit Court alleging negligence on the part of the defendant in installing and maintaining plaintiff's telephone service, proximately causing a great number of calls from customers and others not to be connected to plaintiff, and resulting in loss of business revenue in excess of $362,000. The complaint was later amended to add a res ipsa loquitur count and a wilful misrepresentation count based on a June, 1991, statement by the defendant that the problems had been corrected.

The defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(4), arguing that the MPSC had "primary jurisdiction" over the plaintiff's claim, and that plaintiff had not exhausted its administrative remedies. Macomb Circuit Judge George C. Steeh granted the motion, concluding that the plaintiff's claims were within the jurisdiction of the MPSC, despite the allegations of negligence. The judge reasoned that there was no cause of action in tort where "the parties' relationship was purely contractual in nature since any alleged duties owed to plaintiff by defendant were governed by the MPSC tariffs."

The Court of Appeals affirmed in an unpublished per curiam opinion. Like the trial court, the Court of

---

[3] The parties' experts dispute the nature and extent of any difficulty allegedly caused by the plaintiff's equipment.

Appeals reasoned that the defendant's only duty to the plaintiff arose "as a result of a contractual agreement between defendant and a specific individual or entity." Unpublished opinion per curiam, issued February 27, 1995 (Docket No. 164509), slip op at 1. Thus, the Court concluded, plaintiff had no cognizable cause of action in tort and was required to assert its breach of contract claim before the MPSC. *Id.*

Plaintiff appealed to this Court, and we now affirm the Court of Appeals decision.

## II. PRIMARY JURISDICTION[4]

### A

Examination of the jurisdictional issue begins with this Court's decision in *Valentine v Michigan Bell Telephone Co*, 388 Mich 19, 25-26; 199 NW2d 182 (1972). In *Valentine*, we affirmed the dismissal of the plaintiff's claims in the context of a circuit court complaint seeking a declaration that the MPSC regulations limiting liability were "null and void as against public policy," and alleging "breach of contract, gross negligence, fraud and misrepresentation, malicious and fraudulent failure to provide reasonably adequate equipment and facilities and service, and willful and wanton negligence." *Id.* at 21-22.[5]

---

[4] According to Professor LeDuc in his treatise, Michigan Administrative Law, "[a]n unfortunate aspect of the development of the primary jurisdiction doctrine in Michigan has been the appearance of cases which misapprehend the nature of the doctrine itself." Section 10:60, p 93.

[5] The circuit court granted the defendant's motion for summary disposition. The Court of Appeals affirmed, finding that "regardless of the variety of names Valentine gave to his claim, he was basically complaining of inadequate service and equipment over which the [MPSC] had primary jurisdiction . . . [and] [a]ny appeal . . . would be to the . . . Circuit Court in accordance with MCL 484.114; MSA 22.1454." *Id.* at 22. Since *Valentine*, the Legislature has repealed the statute providing appeal to the

Although the issue of primary jurisdiction was raised, we did not explicitly address the doctrine. Thereafter, panels of the Court of Appeals expressed uncertainty regarding the affect of the *Valentine* decision on the doctrine of primary jurisdiction in the context of suits against public utilities.[6]

Primary jurisdiction "is a concept of judicial deference and discretion." LeDuc, Michigan Administrative Law, § 10:43, p 70. The doctrine exists as a "recognition of the need for orderly and sensible coordination of the work of agencies and of courts." *White Lake Improvement Ass'n v City of Whitehall*, 22 Mich App 262, 282; 177 NW2d 473 (1970). In *White Lake*, the Court of Appeals correctly noted that "[t]he doctrine of primary jurisdiction does not preclude civil litigation; it merely suspends court action." *Id.* at 271. Thus, LeDuc notes, "[p]rimary jurisdiction is not a matter of whether there will be judicial involvement in resolving issues, but rather of when it will occur and where the process will start." *Id.* at § 10:44, p 73. A court of general jurisdiction considers the doctrine of primary jurisdiction "whenever there is concurrent original subject matter jurisdiction regarding a disputed issue in both a court and an administrative agency." *Id.* at § 10:43, p 70.

In *Attorney General v Diamond Mortgage Co*, 414 Mich 603, 613; 327 NW2d 805 (1982), we applied the United States Supreme Court's definition of the doc-

---

circuit court and replaced it with MCL 484.2203; MSA 22.1469(203), which provides for appeal of MPSC final orders directly to the Court of Appeals.

[6] See *Thomas v General Telephone Directory Co*, 127 Mich App 788, 794-795; 339 NW2d 257 (1983); *Denny's Auto & Towing, Inc v Michigan Bell Telephone Co*, 130 Mich App 355, 362; 343 NW2d 550 (1983); *Hunter v General Telephone Co*, 121 Mich App 411, 417; 328 NW2d 648 (1982).

trine from *United States v Western P R Co*, 352 US 59; 77 S Ct 161; 1 L Ed 2d 126 (1956):

> " 'Primary jurisdiction' . . . applies where a claim is originally cognizable in the courts and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."[7]

The Court observed, "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* at 64.

Professors Davis and Pierce identify three major purposes that usually govern the analysis when a court is deciding whether to defer to an administrative agency under this doctrine. First, a court should consider "the extent to which the agency's specialized expertise makes it a preferable forum for resolving the issue . . . ."[8] Second, it should consider "the need for uniform resolution of the issue . . . ." Third, it should consider "the potential that judicial resolution of the issue will have an adverse impact on the agency's performance of its regulatory responsibilities." Davis & Pierce, 2 Administrative Law (3d ed), § 14.1, p 272. Where applicable, courts of general

---

[7] "Primary jurisdiction has been distinguished from the exhaustion of administrative remedies by the fact that exhaustion applies when the claim can originally be brought only before an administrative agency." *Diamond, supra* at 613.

[8] This consideration has also been expressed as inquiring "whether issues of law, rather than issues of fact, are paramount." *La Salle Townhouses Cooperative Ass'n v Detroit Edison*, 69 Mich App 7, 12; 244 NW2d 343 (1976) (BRONSON, P.J., concurring).

jurisdiction weigh these considerations and defer to administrative agencies where the case is more appropriately decided before the administrative body.

In *Diamond*, for example, we rejected application of the doctrine because "[t]he rationales underlying the . . . doctrine [did] not support its application . . . ." *Id.* at 615.[9] Speaking for the Court, Justice COLEMAN declined to apply the doctrine of primary jurisdiction because "the real estate brokerage business is not a heavily regulated industry of the type to which the doctrine has typically been held to apply." *Id.* at 614. Additionally, she explained that the courts, "without interfering with the responsibilities of the Department of Licensing and Regulation . . . can determine what the obligations of real estate brokers are under our consumer protection, usury, and corporation laws." *Id.* at 615. Finally, she observed that the nature of the factual questions in the case, whether defendant made misrepresentations in violation of the Michigan Consumer Protection Act,[10] were not of a type to require agency expertise to evaluate. *Id.*

In *Valentine*, we held that claims by utility customers proceed in the circuit court where the "cause of action is based upon a claim that the utility has violated Public Service Commission promulgated tariffs

---

[9] In *Diamond*, the Attorney General brought an action in quo warranto against the defendant, a licensed real estate broker, seeking "the revocation of Diamond's corporate privileges, relief for injured homeowners through the reformation of the mortgage loan transactions, and the imposition of penalties." *Id.* at 607. The defendants argued that the Department of Licensing and Regulation should have primary jurisdiction to address certain factual disputes since "many of the acts which plaintiff has alleged would have been grounds for the suspension or revocation of their [real estate brokerage] license . . . ." *Id.* at 614.

[10] MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.*

or codes, or if the claim covers some action by the utility outside the regulations of the Public Service Commission . . . ." *Id.*    at 25.  While noting that where a plaintiff pleads a cause of action in tort, "the proper forum . . . is a court of general jurisdiction of this State," *id.* at 26, we observed with regard to contractual liability:

> [T]he code or tariff is part of the contract between the parties and limits of liability therein contained are presumptively valid. *Any claim based upon the contractual obligation of the parties is limited to validly promulgated provisions of the tariff or code within the authority of the Public Service Commission.* Ordinarily, a party aggrieved by the provisions of a tariff or code should seek relief by an attack upon those provisions before the Public Service Commission . . . . [*Id.* (emphasis added).]

In disposing of the case by affirming the lower courts' dismissals, the Court concluded:

> No count sets forth *acts or conduct of defendant* that would constitute negligence, gross negligence, fraud, misrepresentation, or some other tort. As for any claim in contract, no violation of the code or tariff is pleaded. [*Id.* at 30.]

Thus, where a plaintiff seeks relief against a telephone company in a court of general jurisdiction, under *Valentine*, the court may entertain (1) a cause of action in tort, or (2) a claim that the telephone company has *violated* the regulatory code or tariffs.[11] Customer claims anticipated by the tariffs and regula-

---

[11] As Judge BRONSON pointed out in his concurrence in *La Salle*, n 8 *supra* at 13, "tort actions against public utilities can be decided initially by the courts even if a tariff is applicable."

tions, however, are governed by those tariffs, and relief from the presumptively valid limitations on liability therein must first be sought before the MPSC.

### B

The *Valentine* decision is in harmony with the rationale underlying the doctrine of primary jurisdiction. The circuit court has not been ousted of its original jurisdiction under art 6, § 13 of the Michigan Constitution by the regulatory legislation.[12] Under the telephone act of 1913, the MPSC possessed the "power and jurisdiction to hear and pass upon all matters pertaining to, necessary, or incident to the regulation of all public utilities, including . . . telephone . . . ." MCL 460.6(1); MSA 22.13(6)(1). In other words, the Legislature has broadly defined the power and jurisdiction of the MPSC over such matters, without explicitly providing that this power and jurisdiction is exclusive.[13] Moreover, this is not an area in which the regulatory scheme preempts the field altogether so that all claims must be committed to the administrative body. See, e.g., *San Diego Bldg Trades Council v Garmon*, 359 US 236; 79 S Ct 773; 3 L Ed 2d 775 (1959) (denying California state court jurisdiction where union picketing giving rise to allegedly tortious acts was arguably encompassed by the National Labor Relations Act, 29 USC 141 *et seq.*).

---

[12] Article 6, § 13 provides in pertinent part:

> The circuit court shall have original jurisdiction in all matters not prohibited by law; appellate jurisdiction from all inferior courts and tribunals except as otherwise provided by law . . . .

[13] As observed by Professor LeDuc, "the statute did not grant the agency sole jurisdiction . . . ." *Id.* at § 10:51, p 81.

Causes of action in tort and those causes of action alleging that a telephone company has violated the tariffs or code are not cases in which the rationale underlying the doctrine of primary jurisdiction usually apply. The complexities of the regulatory scheme will generally not be implicated where the plaintiff's claim is for personal injury, property damage not covered by the tariffs, or other tortious activity, because the regulatory scheme is not designed to address these matters. Likewise, where the claim is that the defendant has somehow violated the tariffs or code, a court of general jurisdiction will usually be able to decide the legal issues involved in the case.

On the other hand, in *Valentine* we observed:

> The jurisdiction of the [MPSC] is primarily prospective—a matter of promulgating regulations and setting rates. Its tariffs and regulations, if applicable, *control as to the rights of the parties*. The courts are primarily concerned with affording remedies for actions that have taken place. [*Id.* at 30 (emphasis added).]

Where the claim asserted is essentially a matter already contemplated by the controlling tariffs, such as a claim for defective telephone equipment or service, and the only issue is the extent to which those tariffs will apply, deferral to the MPSC under the doctrine of primary jurisdiction is proper. The MPSC, charged with the authority to regulate and oversee telephone companies, possesses the degree of expertise with regard to the purpose and effect of the governing tariffs to decide whether the presumptively valid tariff provisions apply to particular facts that do not constitute tortious conduct or a violation of the code or tariff. Thus, the first consideration, the need

for agency expertise, weighs in favor of deferral of such matters to the MPSC.

The second consideration, the need for uniformity in deciding matters incident to the regulatory scheme, also favors deferral to the MPSC. The MPSC has broad authority to regulate the rate structure to which a telephone company is subject. MCL 460.6(1); MSA 22.13(6)(1). In so doing, it balances the need for the telephone company to cover its expenses and absorb a reasonable return against the need to maintain affordable rates for the use of telephone service by the public. Uniform results in applying the tariffs to customer claims are essential to prevent the telephone company from being exposed to unanticipated liabilities that will hinder its ability to offer affordable telephone service.[14]

Finally, applying the third consideration, if courts were to afford remedies separate from those provided in the tariffs, despite the fact that the tariffs contemplated claims of that nature when they were approved, such remedies could frustrate not only the uniform application of the regulatory scheme but also the agency's ability to perform its regulatory responsibilities. Thus, the considerations in favor of applying primary jurisdiction clearly favor deference to the MPSC. Primary jurisdiction over those claims covered by the tariffs allows the MPSC, through its regulatory expertise, to provide uniform and predictable results in the performance of its regulatory responsibilities. Allowing trial courts to resolve claims incident to the

---

[14] On the other hand, the losses suffered by a business customer of the telephone company, which may be larger than those of a residential customer, are the type of losses for which the customer may obtain insurance.

regulatory scheme, on the other hand, without the expertise of the MPSC, could lead to inconsistent application of the regulatory code or tariffs and competing standards for deciding when the regulatory scheme is operative. This is not what the Legislature intended when it granted the MPSC concurrent jurisdiction over matters incident to the regulatory scheme.

C

Where a customer asserts a cause of action arising purely out of the matters anticipated by the approved tariffs and code, i.e., the regulatory scheme, the doctrine of primary jurisdiction will require the court of general jurisdiction to defer to the MPSC. These matters, "pertaining to, necessary, or incident to the regulation of" the public utility, MCL 460.6(1); MSA 22.13(6)(1), are within the authority of the MPSC.[15] Where, however, a plaintiff's cause of action against a utility company arises in tort, thus potentially requiring a remedy outside the regulatory scheme, or alleges that a telephone company somehow violated the regulatory code or the MPSC tariffs,[16] such a cause

_____

[15] In other words, we have decided the issue of primary jurisdiction as it applies to certain customer claims against a telephone company or other utility companies. Where such a claim is anticipated and governed by the MPSC tariff or regulatory scheme, the governing statutes, MCL 460.6(1); MSA 22.13(6)(1) and MCL 460.58; MSA 22.8, and the above policy considerations commit initial jurisdiction over an attack on the application of the tariff or regulation to the MPSC. See, e.g., *Consumers Power Co v Michigan*, 383 Mich 579, 581; 177 NW2d 160 (1970); *National-Standard Co v Dep't of Treasury*, 384 Mich 184, 204; 180 NW2d 764 (1970). The procedures for MPSC hearings on such an attack are governed by MCL 484.2203(1)-(6); MSA 22.1469(203)(1)-(6) with review by the Court of Appeals as set out under MCL 484.2203(7); MSA 22.1469(203)(7), and MCL 460.59; MSA 22.9.

[16] For example, if the customer was entitled to an allowance under the tariffs, and the telephone company arbitrarily refused the allowance, the customer could proceed in a court of general jurisdiction subject to the

of action may proceed in a court of general jurisdiction.[17]

Plaintiff has not alleged any violation of the code or tariffs. Thus, the issue is whether plaintiff's claim is properly classified as an action in tort or as a claim "pertaining to, necessary, or incident to the regulation of" a public utility.

### III. PLAINTIFF'S CLAIMS

Plaintiff claims in its brief that "by negligent tortious conduct, Defendant interrupted Plaintiff's business by negligently installing and/or maintaining telephone service to Plaintiff's business and by negligently misdirecting telephone calls intended for the Plaintiff to other telephone subscribers." Plaintiff's amended complaint set out allegations of ordinary negligence, res ipsa loquitur, and wilful misrepresentation. The alleged duties owed and violated by defendant were set forth as follows:

> Michigan Bell . . . owed Plaintiff a duty to conduct its business in a reasonable manner; to provide the Plaintiff with adequate telephone service . . . ; to employ competent trained personnel; to maintain, inspect and use equipment in an appropriate manner so as not to injure the Plaintiff in business; and to be honest and forthright in its dealings with Plaintiff.

We agree with the plaintiff that the defendant owed these duties; however, we conclude that they arose

---

jurisdictional requirements of MCL 600.605; MSA 27A.605, MCL 600.8301; MSA 27A.8301, and MCR 4.003.

[17] This is not to say that in a given case the doctrine might not be properly invoked by the court, at its discretion, if the expertise of the MPSC is necessary to the resolution of factual issues concerning matters within its regulatory powers.

solely out of the contractual relationship between the parties and not from any independent legal obligations supporting a cause of action in tort. Thus, they are matters incident to the regulation of the telephone company within the primary jurisdiction of the MPSC.

A

Plaintiff relies on decisions of the Court of Appeals declining to apply the MPSC's primary jurisdiction with respect to *alleged* tortious activity on the part of the telephone company. *Hunter v General Telephone Co*, 121 Mich App 411, 421; 328 NW2d 648 (1982); *Thomas v General Telephone Directory Co*, 127 Mich App 788, 794-795; 339 NW2d 257 (1983). Those cases and others cited by both the plaintiff and the defendant turn on differing interpretations of what is required by *Valentine* in order to plead a cause of action against the telephone company in tort.

For example, in *B & W Rustproofing, Inc v Michigan Bell Telephone Co*, 88 Mich App 242; 276 NW2d 572 (1979), the Court reversed the circuit court's dismissal of the plaintiff's negligence claim where the plaintiff alleged that the defendant "failed to transfer calls to plaintiff's new number and failed to include that number in the [new] . . . directory." *Id.* at 243. The Court cited *Valentine* for the proposition that

> "[a] claim in tort *that sets forth facts which would constitute tortious conduct to the injury and damage of the claimant* can also be filed in a court of general jurisdiction." [*Id.* at 244 (emphasis added).]

Without further elaboration or analysis, the Court concluded, "The complaint sets forth allegations con-

tending that defendant acted in a negligent manner. Since the complaint *alleges* tortious conduct on the part of defendant it was properly brought in circuit court." *Id.* at 245 (emphasis added). *W E Westfall, Inc v Michigan Bell Telephone Co*, 129 Mich App 301; 341 NW2d 514 (1983), followed this approach, concluding that the circuit court had jurisdiction because the "plaintiff's complaint sets forth sufficient factual allegations to state an action in negligence." *Id.* at 304.

In *Hunter*, *supra* at 415, the Court of Appeals reversed an order of partial summary judgment, allowing the plaintiff to proceed in circuit court seeking "damages for the alleged negligent, reckless, wilful, wanton, malicious and intentional misconduct of defendants." These allegations arose from the alleged misdirection of callers attempting to reach the plaintiff's funeral home to the funeral home of the plaintiff's brother. *Id.* at 414. The trial court had granted partial summary judgment in part on the basis of the argument that the MPSC had exclusive jurisdiction over " 'this essentially contractual dispute.' " *Id.* at 417. Despite its conviction that liability should be governed by MPSC Tariff 7, the Court of Appeals held that it was constrained by "binding precedent" from this Court to reverse and remand the plaintiff's theory of ordinary negligence for trial. *Id.* The Court read *Valentine* as appearing to affirm the notion that "once tortious conduct is properly alleged, a plaintiff may proceed in a court of general jurisdiction against a telephone company to recover full tort damages . . . ." *Id.* at 419.

The panel concluded that *Valentine* had essentially "emasculated" the regulatory scheme, *id.* at 421, but

it was forced to reverse entry of partial summary judgment for the defendants.[18]

*B & W Rustproofing*, *Westfall*, and *Hunter* apparently construed *Valentine* to resolve the jurisdictional question solely on the basis of a *mere allegation* of tortious conduct, without any serious inquiry into whether the facts alleged in the complaint actually supported the allegations of tortious conduct or violation of a legal duty independent of the contractual relationship. However, *Valentine* requires such inquiry in the very language quoted by the Court in *B & W Rustproofing*.[19]

Other panels of the Court of Appeals have rejected the approach that an allegation of negligence permits a plaintiff to proceed in a court of general jurisdiction. For example, in *John Cannon Agency v Michigan Bell Telephone Co*, 128 Mich App 472, 476; 341 NW2d 115 (1981), the Court rejected the plaintiff's

---

[18] The panel stated:

We have carefully considered the parties' arguments and, from a policy standpoint, we are persuaded that defendants' claims that their liability in this case should be governed by the tariffs and regulation are sound. On the authority of binding precedent, however, we must reverse entry of partial summary judgment for defendants and remand for trial on plaintiff's theory of ordinary negligence. [*Id.* at 417.]

Further uncertainty in this area has followed from the *result* in *Valentine*. The Supreme Court found that the plaintiff in *Valentine* had not pleaded [tortious] "acts or conduct of defendant . . . ." We respectfully disagree . . . and we invite the Supreme Court to clarify the significance of its holding . . . . [*Id.* at 421 (emphasis in original).]

[19] *Valentine* requires that the plaintiff plead "facts which would constitute tortious conduct to the injury and damage of the claimant . . . ." *Id.* at 30; *B & W Rustproofing* at 244. Negligence actions rest on the presence of a legal duty. MCR 2.116(C)(8); *Friedman v Dozorc*, 412 Mich 1, 22; 312 NW2d 585 (1981).

attempt to avoid MPSC limits on liability by alleging negligence in its complaint:

> Plaintiff's claim, although phrased in tort, is clearly one which is based upon the contractual obligations of the parties. The only duty alleged in plaintiff's complaint is based upon defendant's promise to inform persons who dialed plaintiff's old telephone number of plaintiff's new telephone number. Plaintiff's argument must be rejected on the authority of *Valentine, supra.*

The Court of Appeals took this same approach in the instant case, stating:

> In a contractual setting, a tort action must rest on a breach of duty distinct from contract. . . . Mere failure to perform an obligation under a contract cannot give rise to a negligence cause of action in tort. . . .
>
> The instant defendant does not owe a general duty to provide and maintain telephone service to the public at large. To the contrary, defendant's "duty" to do so only arises as a result of a contractual agreement between defendant and a specific individual or entity. . . . [A]bsent the contract for telephone service . . . , defendant did not have a "duty" to provide and maintain the phone system in question. [Slip op at 1-2. See also *Heitsch v Hampton,* 167 Mich App 629, 634; 423 NW2d 297 (1988) (refusing, absent extraordinary circumstances, to extend the defendant telephone company's duty beyond its contractual obligations).]

We clarify *Valentine* and hold that the jurisdictional question is not to be resolved by mere allegation, but rather by analysis of whether the facts pleaded give rise to a legal duty in tort independent of breach of contract.

B

Admitting that mere failure to perform or nonfeasance would not give rise to an action in tort, plaintiff asserts that this case sounds in tort because the defendant committed misfeasance in negligently failing to properly and fully perform its contract. The question whether an action in tort may arise out of a contractual promise has not been without difficulty. *Hart v Ludwig*, 347 Mich 559, 560; 79 NW2d 895 (1956). However, in *Hart*, the Court discussed the issue at length in determining whether the plaintiff could maintain an action in tort against a defendant who failed to adequately care for the plaintiff's orchard under the parties' oral contract. In refusing to allow the plaintiff's action to proceed in tort, the Court explained, quoting *Tuttle v Gilbert Mfg Co*, 145 Mass 169, 175; 13 NE 465 (1887):

> "As a general rule, there must be some active negligence or misfeasance to support a tort. There must be some breach of duty distinct from breach of contract." [*Hart* at 563.]

Acknowledging that the distinction between misfeasance and nonfeasance is often difficult to discern, the Court explained that the fundamental principle separating the causes of action is the concept of duty. The Court noted those cases where misfeasance on a contract was found to support an action in tort as follows:

> [I]n each a situation of peril [was] created, with respect to which a tort action would lie without having recourse to the contract itself. Machinery [was] set in motion and *life or property* [was] *endangered.* . . . In such cases . . . we have a "breach of duty distinct from . . . contract." Or, as

Prosser puts it . . . "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." [*Id.* at 565 (emphasis added).]

In other words, the threshold inquiry is whether the plaintiff alleges violation of a legal duty separate and distinct from the contractual obligation. The plaintiff's action in *Hart* failed to state a cause of action in tort because "[t]he only duty, other than that voluntarily assumed in the contract to which the defendant was subject, was his duty to perform his promise in a careful and skillful manner without risk of harm to others, the violation of which [was] not alleged." *Id.* at 565. The only other duty—to perform the promise—arose from the contract and could not support an action in tort. *Id.* at 565-566.

Prosser and Keeton discuss the distinction further:

*Misfeasance or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things.* Generally speaking, there is a duty to exercise reasonable care in how one acts to avoid physical harm to persons and tangible things. Entering into a contract with another pursuant to which one party promises to do something does not alter the fact that there was a preexisting obligation or duty to avoid harm when one acts. [Torts, § 92, pp 656-657.]

This duty, however, does not extend to "intangible economic losses." *Id.* at 657. For this type of loss, "the manifested intent of the parties should ordinarily control the nature and extent of the obligations of the parties . . . ." *Id.* In addition to acknowledging this distinction at least as far back as *Hart,* the distinction has more recently been applied to sales contracts

under the UCC under the rubric of the "economic loss doctrine." *Neibarger v Universal Cooperatives*, 439 Mich 512, 527; 486 NW2d 612 (1992). The concept has been approved in other contexts. See *Corl v Huron Castings, Inc*, 450 Mich 620, 626-628; 544 NW2d 278 (1996) (refusing to apply the collateral source rule for tort damages to an employment contract); *Ferrett v General Motors Corp*, 438 Mich 235, 243; 475 NW2d 243 (1991) (refusing to recognize a cause of action in tort for negligent evaluation of an employee).

In this case, as in *Hart*, the defendant agreed to provide the plaintiff with services under a contract. Like the defendant in *Hart*, Michigan Bell allegedly failed to fully perform according to the terms of its promise. While plaintiff's allegations arguably make out a claim for "negligent performance" of the contract, there is no allegation that this conduct by the defendant constitutes tortious activity in that it caused physical harm to persons or tangible property; and plaintiff does not allege violation of an independent legal duty distinct from the duties arising out of the contractual relationship. Like the plaintiff in *Valentine*, "regardless of the variety of names [plaintiff gives the] claim, [plaintiff is] basically complaining of inadequate service and equipment . . . ." *Id.* at 22. Thus, under the principles outlined above, there is no cognizable cause of action in tort.

C

Prosser and Keeton discuss "a few situations in which failure to perform a contract may amount to a tort." Torts, § 92, p 662. Such liability applies principally to common carriers and public utilities under

"the old tort duty to serve all comers which arose as to common callings before the idea of contract had developed." *Id.* Although telephone companies and other utilities may appear to fall under this old duty, the comprehensive regulatory scheme set up by the Legislature and under which the MPSC was created supersedes the applicability of this duty in Michigan. Prosser & Keeton state:

> Most public utilities are now rather intensely regulated. . . . [T]he duty and responsibilities of the regulated industries should be and are largely determined . . . by the regulatory agencies. In dealing with the civil liability of a public utility . . . , primary attention has been given to the nature of the loss . . . . Intangible consequential damages for interruptions of service and defective performance will normally be allocated to the customer under tariff provisions approved by regulatory agencies. Substantial losses of this kind are normally incurred by industrial and commercial customers who can insure against losses. . . . In the light of this regulatory process, the civil liability is neither tortious nor contractual but is rather *sui generis.* [*Id.* at 663.]

This is precisely how the regulatory scheme in Michigan was designed to work. The Legislature provided for the regulatory and jurisdictional authority of the MPSC. In the telephone act of 1913, MCL 460.6(1); MSA 22.13(6)(1) provided:

> The public service commission is vested with complete power and jurisdiction to regulate all public utilities in the state . . . . The public service commission is vested with the power and jurisdiction to regulate all . . . services, rules, conditions of service, and all other matters pertaining to the formation, operation, or direction of such public utilities. The public service commission is further granted the power and jurisdiction to hear and pass upon all matters

pertaining to, necessary, or incident to the regulation of all
public utilities, including . . . telephone . . . .

MPSC Tariff 7 states the following with regard to liability for damages:

> C. Liability of the Company
>
> 1. In the event of an interruption to the service which is not due to the negligence or willful act of the customer, upon notice and application by the customer an allowance will be made for the time interruption continues.
>
> 2. The liability of the Company for damages arising out of mistakes, omissions, interruptions, delays, errors or defects in transmission, or failures or defects in facilities furnished by the Company, occurring in the course of furnishing service or other facilities and not caused by the negligence of the customer, or of the Company in failing to maintain proper standards of maintenance and operation and to exercise reasonable supervision shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such mistake, omission, interruption, delay or error or defect in transmission, or failure or defect in facilities occurs.

This provision provides that where a customer's telephone service is defective in a manner anticipated in the tariff, and it is not the customer's fault, recovery of intangible economic losses, whatever their cause, is limited to the amount the customer paid for the service during the time it was defectively provided.[20] Such defects, by virtue of the fact the tariff anticipated them, are matters "incident to the regula-

---

[20] Much of the focus in the briefs and oral argument was on the meaning of Tariff 7 and its scope with regard to which types of actions fell under the jurisdiction of the MPSC or the courts of general jurisdiction. However, a regulatory agency can neither enlarge nor contract the original jurisdiction of the courts. This provision is relevant only to the scope of a telephone company's liability with regard to the types of problems

tion of" the telephone company. Tariff 7's limitation on liability for nonperformance or incomplete performance by a telephone company is presumptively valid, and, as part of the contract between the parties, is the manifested intention of the parties to the agreement. *Valentine* at 25-26. If a customer is aggrieved by this contractual provision, under the doctrine of primary jurisdiction, its first remedy is before the governing administrative body—the MPSC—not a court of general jurisdiction.

D

As noted above, the problems plaintiff reported to defendant were no dial tone, false busy signals, crossed lines, inability to receive or place calls without a calling card, static, misdirection to another number, no ringing, and low volume. Assuming, as we do for present purposes, that these problems were solely the fault of the defendant, they still fall under the broad language of the tariff as "mistakes, omissions, interruptions, delays, errors or defects in transmission, or failures or defects in facilities furnished by the Company, occurring in the course of furnishing service or other facilities and not caused by the negligence of the customer . . . ." Thus, because these types of problems are anticipated by the tariffs, and are matters incident to the regulation of the utility, the plaintiff's claim falls within the primary jurisdiction of the MPSC and is limited by the tariff.[21]

---

listed. It is presumptively valid insofar as it does not conflict with governing legislation or the decisions of this Court.

[21] We leave to the MPSC the issue whether the tariff language immediately following the above quotation further limits the company's liability where it fails to "maintain proper standards," etc., or exempts plaintiffs damaged by such failures from the preceding limitation on recovery.

IV. CONCLUSION

The plaintiff's cause of action was properly dismissed in favor of the primary jurisdiction of the MPSC where the only duty allegedly breached was the contractual duty the defendant had to the plaintiff under the terms of the customer service relationship. The plaintiff did not allege any violation of the regulatory code or tariffs, nor did it allege acts sufficient to constitute tortious conduct. The presumptively valid and comprehensive regulatory scheme anticipated this type of liability and accounted for it adequately as a matter pertaining to the regulation of the public utility. The decision of the Court of Appeals is affirmed.

MALLETT, C.J., and BRICKLEY, CAVANAGH, RILEY, and WEAVER, JJ., concurred with BOYLE, J.

KELLY, J., took no part in the decision of this case.

---

There was also much focus on this issue in the briefs and argument. Because we need not reach the issue where plaintiff's claims all clearly fall under the preceding clause, and where the latter clause ("or of the Company in failing to maintain . . . .") is so poorly drafted, we defer construction to the expertise of the MPSC. We believe this is consistent with the doctrine of primary jurisdiction. However, we strongly encourage the MPSC to require more clarity when approving future tariff language.