*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PRECISION STANDARD, INC.,

        Plaintiff-Appellant,

v

ADP TAX SERVICES, INC.,

        Defendant-Appellee.

UNPUBLISHED
December 09, 2025
1:10 PM

No. 373820
Oakland Circuit Court
LC No. 2024-205934-CB

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Plaintiff, Precision Standard, Inc. (Precision), and defendant, ADP Tax Services, Inc. (ADP), entered into a payroll agreement that required ADP to pay Precision's payroll taxes with funds that Precision provided. Precision filed this action alleging breach of fiduciary duty and conversion after ADP delayed paying the taxes despite being in possession of the funds. ADP moved for summary disposition under MCR 2.116(C)(8) and (10), which the trial court granted, but the court allowed Precision to file an amended complaint alleging breach of contract. Instead of filing an amended complaint, Precision sought reconsideration, which the trial court denied. Precision appeals by right the trial court's order denying reconsideration. Because the trial court properly determined that the separate-and-distinct-duty test precluded Precision's claims, we affirm.

## I. FACTS AND PROCEEDINGS

On June 18, 2020, the parties entered into a payroll agreement that required ADP to perform payroll and tax services for Precision. According to the agreement, Precision forwarded funds to ADP to be used for the payment of Precision's tax obligations, and ADP billed Precision for its services. In August 2021, Precision began receiving checks from ADP, but it was unclear what the checks were for. When Precision's employees contacted ADP to inquire about the checks, they were told to just deposit them. Precision retained Sabina Bravo Persons, a certified public accountant, to look into the matter. According to Persons, ADP advised that the checks were overpayments of Precision's payroll-tax liabilities that Precision remitted to ADP, but which ADP did not pay to the taxing agencies. ADP further advised that it did not pay any of Precision's

-1-

payroll taxes or file any of Precision's tax returns because, "according to their system," ADP was not handling Precision's tax filings. ADP indicated that it would correct the error and pay the taxes, but it would take a few months to do so.

Persons continued to reach out to ADP to ensure that Precision's outstanding taxes had been paid. Ultimately, Precision retained an attorney, Neal Nusholtz, to contact ADP. After he did so, ADP paid the taxes. Precision filed this action against ADP, alleging breach of fiduciary duty and conversion. It alleged that it paid ADP a total of $250,419.91 after it received ADP's invoices from 2020 through 2022. It maintained that the funds were intended to be used to prepay its payroll taxes, but ADP failed to do so. It also alleged that ADP had a duty to promptly inform Precision if ADP failed to use the funds that Precision provided to pay the taxes, but ADP concealed its nonpayment from Precision, which resulted in Precision spending $10,776.08 to retain Persons and Nusholtz to ensure that the taxes were paid. Precision asserted that ADP's use of Precision's $250,419.91 for ADP's own purposes constituted conversion. It maintained that it suffered $10,776.08 in damages and sought treble damages under MCL 600.2919a.[1]

ADP moved for summary disposition under MCR 2.116(C)(8) and (10). Relevant to this appeal, ADP argued that the matter at issue in the complaint was resolved before Precision filed the complaint, which Precision acknowledged by alleging that ADP had paid the taxes. ADP denied converting Precision's funds, but also argued that Precision's purported damages of $10,776.08 did not represent the amount allegedly converted. Rather, Precision expended that amount to retain an accountant and an attorney. ADP noted that Precision failed to allege a breach-of-contract claim and instead relied on tort theories to "get around" the contractual language and collect treble damages. The contract provided, in relevant part:

11. Limitation of Liability

This Section 11 sets forth the full extent or ADP's liability for damages resulting from this Agreement or the Services rendered or to be rendered hereunder, regardless of the form in which such liability or claim for damages may be asserted, and sets forth the full extent of Your remedies. . . .

\* \* \*

A. ADP Responsibility ADP will correct any of Your reports, data or tax agency filings, as the case may be, produced incorrectly as a result of an ADP error, at no charge to You. Additionally, ADP will reimburse You for (i) actual damages You incur as a direct result of the criminal or fraudulent acts or willful misconduct of ADP or any of its employees, or the loss or misdirection of Your funds in possession or control of ADP due to ADP's error or omission (ii) any penalty imposed against You as a result of an error or omission made by ADP in performing the Tax Filing Services or (iii) any interest assessed against You as a result of ADP

---

[1] MCL 600.2919a(1)(a) allows for "3 times the amount of actual damages" plus costs and attorney's fees because of "[a]nother person's stealing or embezzling property or converting property to the other person's own use."

holding Your tax funds past the applicable due date as a result of an error or omission made by ADP in performing the Tax Filing Services.

In addition, the contract disclaimed consequential damages:

> D. <u>No Consequential Damages</u> NEITHER ADP, NOR YOU WILL BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR OTHER SIMILAR DAMAGES . . . THAT THE OTHER PARTY MAY INCUR OR EXPERIENCE IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES, HOWEVER CAUSED AND UNDER WHATEVER THEORY OF LIABILITY, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

ADP also argued that because its duty to Precision arose out of the contract, Precision could not maintain an action in tort. ADP asserted that, in order for a valid tort claim to exist, there must be a duty separate and distinct from its contractual obligation. It maintained that Precision's claims fell squarely within the duties that ADP owed under the contract and that, but for the contract, it would not have been required to provide payroll and tax services to Precision. Alternatively, ADP argued that Precision's conversion claim should be dismissed because Precision's alleged damages consisted of professional fees rather than the funds purportedly converted.

Precision opposed ADP's motion, arguing, in relevant part, that a conversion of funds, even if temporary, still constitutes conversion, and Michigan law allows damages for a temporary conversion. Precision also asserted that that there existed a fiduciary relationship between the parties, and ADP's silent fraud forced it to retain tax professionals to protect itself from ADP's misfeasance. It claimed that it was required to pay the tax professionals approximately $10,776 because of ADP's conversion and silent fraud. Precision did not respond to ADP's separate-and-distinct-duty argument.

The trial court granted ADP's motion, but allowed Precision to file an amended complaint alleging breach of contract. The court determined that ADP did not owe Precision a duty separate and distinct from the duty ADP owed under the parties' contract. The court stated:

> [N]o relationship between Precision and ADP existed giving rise to a legal duty separate from the parties' Agreement. Precision's claims that ADP failed to timely file Precision's payroll tax returns; failed to timely pay Precision's payroll taxes to the government; and failed to disclose that it had not filed or paid the payroll taxes and returns, relate to ADP's failure to abide by the terms of that Agreement. Because there is no separate duty distinct from that existing under the Agreement's obligations and because breach of the duty would not have been possible but for the contractual relationship, ADP's motion is GRANTED.

Because ADP acknowledged that Precision's complaint related to a contractual relationship, the court permitted Precision to file an amended complaint alleging a breach-of-contract claim within 14 days from the date of the court's opinion and order.

Rather than filing an amended complaint, Precision moved for reconsideration. It argued that the trial court's separate-and-distinct-duty analysis erroneously applied a "but for" standard

to that facts of this case. Precision maintained that instead of addressing whether a breach of duty would have occurred "but for" the contract, the proper inquiry was whether a duty existed independent of the contract. The trial court permitted ADP to respond to the motion. ADP filed a response, arguing that all of its obligations arose under the contract, which contained explicit provisions regarding ADP's liability. It maintained that it owed no duty to Precision unrelated to the contract. The trial court denied reconsideration on the basis that Precision failed to allege a duty that ADP owed separate and distinct from the contract. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Kilian v TCF Nat'l Bank*, 343 Mich App 621, 630; 997 NW2d 745 (2022). ADP moved for summary disposition under MCR 2.116(C)(8) and (10). "When an action is based on a written contract, it is generally necessary to attach a copy of the contract to the complaint." *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007). The contract then "becomes part of the pleadings themselves, even for purposes of review under MCR 2.116(C)(8)." *Id*. Because Precision did not attach a copy of the contract to its complaint, it appears that the trial court granted ADP's motion under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) challenges the factual sufficiency of the plaintiff's complaint. *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 34; 852 NW2d 78 (2014). Summary disposition under subrule (C)(10) is properly granted "when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016).

We also review de novo the interpretation of a contract. *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 474; 986 NW2d 427 (2022). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010) (quotation marks and citation omitted). "[T]he language of the parties' contract is the best way to determine what the parties intended." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 476; 663 NW2d 447 (2003). If contractual language is unambiguous, it must be interpreted in accordance with its plain meaning. *Shay*, 487 Mich at 660. "[C]ourts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp*, 468 Mich at 468.

## III. ANALYSIS

Generally, when a cause of action arises from the breach of a promise, the plaintiff's action lies in contract. *Hart v Ludwig*, 347 Mich 559, 563; 79 NW2d 895 (1956). If a claim is based on negligence, in other words "more than a mere breach of a promise," the action lies in tort. *Id*. (quotation marks and citation omitted). Thus, "[a]s a general rule, there must be some active negligence or misfeasance to support [a] tort." *Id*. (quotation marks and citation omitted). "There must be some breach of duty distinct from breach of contract." *Id*. (quotation marks and citation omitted). "[T]he threshold inquiry is whether the plaintiff alleges violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Constr Corp v Mich Bell Telephone Co*, 454 Mich 65, 84; 559 NW2d 647 (1997).

In *Rinaldo's*, the plaintiff moved its place of business to a new location and requested the defendant telephone company to transfer its phone service to the new location. *Id*. at 67. The plaintiff began to experience difficulties with its phone service, which it alleged caused phone calls from customers not to be connected, resulting in a loss of business revenue. *Id*. at 68. The plaintiff filed suit against the defendant, alleging negligence, res ipsa loquitur, and willful misrepresentation. *Id*. at 78. The specific duties that the plaintiff alleged the defendant violated included the "duty to conduct its business in a reasonable manner" and "to be honest and forthright in its dealings" with the plaintiff. *Id*. Our Supreme Court determined as follows:

> We agree with the plaintiff that the defendant owed these duties; however, we conclude that they arose solely out of the contractual relationship between the parties and not from any independent legal obligations supporting a cause of action in tort. [*Id*. at 78-79.]

> \* \* \*

> In this case, as in *Hart*, the defendant agreed to provide the plaintiff with services under a contract. Like the defendant in *Hart*, Michigan Bell allegedly failed to fully perform according to the terms of its promise. While plaintiff's allegations arguably make out a claim for "negligent performance" of the contract, there is no allegation that this conduct by the defendant constitutes tortious activity in that it caused physical harm to persons or tangible property; and plaintiff does not allege violation of an independent legal duty distinct from the duties arising out of the contractual relationship. [*Id*. at 85.]

In the instant case, Precision alleged that ADP had a duty to promptly inform Precision that it did not file Precision's payroll tax returns and did not use Precision's funds to pay Precision's payroll taxes. Precision also alleged that ADP concealed its failures from Precision. As in *Rinaldo's*, Precision's allegations amount to a claim that ADP negligently performed its obligations under the parties' contract. Precision failed to allege that ADP violated a duty that it owed Precision separate and distinct from those owed under the contract. Precision's reliance on *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1; 779 NW2d 237 (2010), is misplaced. Unlike the instant case, *Appletree Mktg* did not involve a contract between the parties that gave rise to the duty alleged to have been breached. Rather, that case involved the Agricultural Commodities Marketing Act (ACMA), MCL 290.651 *et seq*., which the Court determined "did not abrogate common law claims for conversion." *Id*. at 16-17. The Court further stated, "unlike an ACMA claim, a conversion claim does not arise from a distributor's mere failure to deduct or remit any assessment due" under the act. *Id*. at 15 (quotation marks, brackets, and citation omitted).

Notably, ADP ultimately performed under the contract and paid Precision's tax obligations, albeit it did so late. Paragraph 11(A) of the contract contemplated ADP's liability in this regard and required ADP to reimburse Precision for any penalties and interest assessed "as a result of ADP holding Your tax funds past the applicable due date as a result of an error or omission made by ADP in performing the Tax Filing Services." Accordingly, the contract specifically provided a remedy for the exact scenario that occurred. In addition, ¶ 11(D) of the contract disclaimed consequential damages that the other party "may incur or experience in connection with" the

contract. (All caps omitted.) Precision alleged that it incurred fees because it hired an accountant and an attorney to ensure that its tax obligations had been paid. It claimed as damages the amount that it paid the accountant and attorney, and asserted that the amount should be tripled under MCL 600.2919a. Because Precision incurred its alleged damages in connection with the contract, however, they were specifically excluded under the contractual language.

Affirmed. ADP, being the prevailing party, may tax costs. MCR 7.219.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani