**PROGRESSIVE MICHIGAN
INSURANCE COMPANY,
Plaintiff,**

v.

**UNITED WISCONSIN LIFE INSUR-
ANCE COMPANY and American
Medical Security, Defendants.**

**No.  99–70776.**

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 14, 2000.

Robert L. Goldenbogen, Garan, Lucow, Port Huron, MI, for plaintiff.

Arthur J. LeVasseur, Lauren J. Hammett, Fischer, Franklin, Detroit, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This case involves a priority and recoupment dispute between two insurers; a no-fault automobile insurer and an insurer of an employee health benefit plan governed by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq. Plaintiff Progressive Michigan Insurance Company ("Progressive"), a no-fault auto-insurer under Michigan law, and Defendants United Wisconsin Life Insurance Company ("UWLIC"), the ERISA plan insurer, and American Medical Security ("AMS"), the plan administrator, each claim the other party is primarily liable to pay the medical expenses resulting from an insured's auto accident. Plaintiff has sued Defendants for a declaration that the insured ERISA plan is the primary provider of medical benefits. Plaintiff also seeks reimbursement for expenses paid to date. Defendants have countersued raising similar claims.

This matter comes before the Court on Progressive's motion for summary judgment. Progressive's motion is GRANTED IN PART AND DENIED IN PART AND DEFENDANTS' COUNTERCLAIM IS DISMISSED. For the reasons stated below, this Court concludes that: (1) Michigan law governs the parties' priority dispute because § 3109a of Michigan's no-fault law is "saved" from ERISA preemption; (2) ERISA's "deemer" clause does not exempt the insured ERISA plan at issue here from § 3109a of Michigan's no-fault law; (3) under Michigan law, Progressive is secondarily liable, and the insured ERISA plan is primarily liable for payment of the insured's medical expenses resulting from his December 15, 1997 auto accident; (4) Progressive is not entitled to recoupment of the initial $5,487.53 payment to Defendants because it was made with full knowledge of the facts and with-

out a reservation of the right to dispute the priority issue and thus was voluntarily made under a mistake of law; (5) Progressive is entitled to recoupment of the remaining payments made to Defendants out of priority if shown to be for Mr. Cooper's medical expenses resulting from the December 1997 accident; and (6) in light of the above rulings, Defendants' counterclaim is dismissed.

## I. Facts

When John Cooper, an insured under both plans, was injured in an auto accident on December 15, 1997, Defendants initially paid $5,487.53 of Cooper's medical expenses. At the time of the accident, Mr. Cooper's medical expenses were covered under an insured employee benefit plan provided by his wife's employer. The plan was funded by an insurance policy provided by Defendant UWLIC and was administered by Defendant AMS.

On June 10, 1998, Defendants' attorneys wrote to Progressive informing it that, under the terms of the subject ERISA plan, Progressive was primarily liable for Mr. Cooper's medical expenses. On September 29, 1998, Progressive responded with a check in the $5,487.53 amount requested but did not submit a cover letter questioning priority or reserving the right to pursue a claim that it was not primarily liable for Mr. Cooper's medical expenses.

On October 23, 1998, Defendants' attorneys again wrote to Progressive seeking reimbursement of an additional $1,440 it had paid in connection with Mr. Cooper's medical expenses resulting from the December 1997 accident, and informing Progressive that they had advised AMS to discontinue paying any further bills and to refer all service providers to Progressive as the primary insurance carrier. A December 30, 1998 letter from Defendants' attorneys confirms conversations where Progressive agreed to pay any submitted claims but also reserved the right to seek reimbursement from Defendants if Progressive later determined that Defendants were primarily liable for Mr. Cooper's medical expenses. *See* Response, Ex. G.

Progressive did not pay the additional $1,440 Defendants requested.

Progressive filed this action in February 1999 seeking a declaration that Defendant UWLIC is primarily liable for Mr. Cooper's medical expenses and seeking recoupment of the $5,487.53 paid in September 1998 and all additional sums paid by it out of priority for Mr. Cooper's medical expenses. Defendants responded with a Counterclaim alleging Progressive is primarily liable for Mr. Cooper's medical expenses and seeking recoupment of the $1,440 in claims paid by AMS and UWLIC.

## II. Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Analysis

### A. ERISA Preemption

The parties do not dispute that § 3109a of Michigan's no fault law "relates to" an employee benefit plan. Defendants do, however, dispute whether § 3109a is "saved" under ERISA's saving clause. Specifically, Defendants argue: (1) § 3109a does not "regulate insurance" within the meaning of the saving clause because it does not pass the required com-

mon sense and McCarran–Ferguson Act factor tests; (2) the fact that an ERISA plan is insured or uninsured is not a critical factor when determining ERISA preemption issues; and (3) the Michigan Supreme Court's interpretation of § 3109a permits direct as opposed to indirect regulation of the subject *insured* ERISA plan. Defendants' arguments are without merit. Mich.Comp.Laws Ann. § 500.3109a[1], which addresses the coordination of insurance benefits under Michigan's no-fault law, escapes preemption under ERISA's saving clause, 29 U.S.C. § 1144(b)(2)(A).[2] Accordingly, Michigan law, not federal law, governs whether Progressive or the insured ERISA plan is primarily responsible for Mr. Cooper's medical expenses.

The Michigan and federal courts have considered the required common sense and McCarron–Ferguson Act factor tests and have consistently observed that § 3109a of Michigan's no-fault law "regulates insurance" and thus escapes preemption under ERISA's savings clause. *See Northern Group Serv., Inc. v. Auto Owners Ins. Co.*, 833 F.2d 85, 89–90 (6th Cir.1987) (where the Sixth Circuit observed that § 3109a "clearly 'regulates insurance' within the meaning of the saving clause" and further observed that "[t]his conclusion comports both with a common sense view of the statutory language and with a more formal assessment that the practice falls within the meaning of 'business of insurance' covered by the McCarran–Ferguson Act."),

*impliedly overruled on other grounds as noted in Auto Club Ins. Ass'n v. Health and Welfare Plans, Inc.*, 961 F.2d 588, 593 (6th Cir.1992) (where the Court observed that the United States Supreme Court's decision in *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) effectively overruled *Northern Group* "insofar as self-insured ERISA plans are concerned.") *Accord American Medical Security, Inc. v. AAA Michigan*, Case No. 97–75632 (E.D.Mich. Sept. 9, 1999) (unpublished) (J. Cohn), Slip Op. at 5.

■ Moreover, because the ERISA plan at issue here is funded by an insurance policy as opposed to being self-funded, ERISA's deemer clause[3] will not exempt the plan from § 3109a of Michigan's no-fault law. Defendant UWLIC remains an insurer for purposes of the Michigan state law at issue here, is not relieved from § 3109a, and thus the insured ERISA plan here is subject to indirect state insurance law regulation as a result of Michigan's regulation of the insurer UWLIC. As the United States Supreme court observed in *FMC Corp.*:

We read the deemer clause to *exempt self-funded ERISA plans* from state laws that "regulat[e] insurance" within the meaning of the saving clause.... On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation. *An insur-*

---

1. Section 500.3109a of Michigan's No Fault Act provides that:

   An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

2. ERISA's saving clause provides:

   Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from

any law of any State which regulates insurance, banking, or securities.

   29 U.S.C. § 1144(b)(2)(A).

3. ERISA's deemer clause provides:

   Neither an employee benefit plan ... nor any trust established under such plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

   29 U.S.C. § 1144(b)(2)(B).

*ance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.* (Emphasis added).

*Id.* at 61, 111 S.Ct. 403.

■ Contrary to Defendants' arguments here, the distinction between insured and uninsured ERISA plans is a crucial factor when considering application of ERISA's preemption, saving and deemer clauses. "Our interpretation of the deemer clause makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurance contracts; if the plan is uninsured, the State may not regulate it." *Id.* at 64, 111 S.Ct. 403. The Sixth Circuit and the Michigan Supreme Court did not hold otherwise in *Lincoln Mutual Cas. Co. v. Lectron Products, Inc., Employee Health Ben. Plan,* 970 F.2d 206 (6th Cir.1992) and in *Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.,* 443 Mich. 358, 505 N.W.2d 820 (1993).

In *Lincoln Mutual,* the Sixth Circuit followed the holding in *FMC Corp.,* observed that self-funded ERISA plans are to be distinguished from insured plans when applying ERISA's deemer clause, and concluded that ERISA's deemer clause would exempt the uninsured ERISA plan at issue in *Lincoln Mutual* from § 3109a of Michigan's no-fault law. *Lincoln Mutual,* 970 F.2d at 209–210. *Accord Frederick & Herrud,* 443 Mich. 358, 505 N.W.2d 820, 833–834. The *Lincoln Mutual* court did not hold that § 3109a of Michigan's no-fault law fell outside ERISA's saving clause. Rather, it observed:

Upon review of the facts in the instant case, we conclude that Mich.Comp.Laws § 500.3109a, *as it relates to the [subject self-funded] Plan,* is not "saved" under the insurance-regulation exception to preemption because, under the "deem-

er" clause, the Plan is " 'deemed' not to be an insurance company for purposes of state laws," such as § 3109a, that purport to regulate insurance contracts. (Emphasis added).

*Lincoln Mutual,* 970 F.2d at 210 (quoting *Liberty Mut. Ins. Group v. Iron Workers Health Fund of Eastern Michigan,* 879 F.2d 1384, 1386 (6th Cir.1989)).

Both the United States Supreme Court in *FMC Corp.* and the Sixth Circuit in *Lincoln Mutual* observed that, because they are saved from ERISA preemption, state laws that regulate insurance and insurance companies will indirectly regulate insured ERISA plans. The same state laws regulating insurance, although "saved" from ERISA preemption, will not have any effect on uninsured or self-funded ERISA plans because those plans are "deemed" under ERISA's deemer clause not to be insurance companies. The Court in *FMC Corp.* construed the deemer clause "to exempt self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the savings clause." The Sixth Circuit followed *FMC Corp.* in *Lincoln Mutual* and similarly held that the self-funded ERISA plan at issue in that case was exempt from § 3109a of Michigan's no fault law. *Accord Frederick & Herrud,* 443 Mich. 358, 505 N.W.2d 820, 833–834.

The arguments Defendants raise here were recently rejected in two cases addressing an identical priority dispute between a Michigan no-fault insurer and an insured ERISA plan. In *American Med. Sec., Inc. v. Allstate Ins. Co.,* 235 Mich. App. 301, 597 N.W.2d 244 (1999), the Michigan Court of Appeals held that:

Section 3109a is not preempted under the circumstances of this case. The employee benefit plan at issue was not a self-funded plan, and plaintiff's insurer, United Wisconsin, was subject to Michigan insurance law and regulation, specifically § 3109a, even where that statute indirectly affects the plan. Our ruling does not allow our state law to control

an ERISA plan, but simply recognizes that state law can regulate the insurer of an ERISA plan even if that regulation may indirectly affect the plan, which is the case here.

*Id.* at 307, 597 N.W.2d at 247. This Court, in an unpublished decision by Judge Avern Cohn, reached the same conclusion in an identical priority dispute. *See American Med. Sec., Inc. v. AAA,* Case No. 97–75632 (E.D.Mich. Sept. 9, 1999) (unpublished) (J. Cohn).

The state law in question here, § 3109a, regulates insurance within the meaning of ERISA's saving clause. The fact that it also indirectly affects insured ERISA plans does not change this fact. *See FMC Corp.,* 498 U.S. at 61, 111 S.Ct. 403. Likewise, the Michigan courts' interpretation of Mich.Comp.Laws Ann. § 500.3109a does not remove this state law regulating insurance from ERISA's saving clause. Courts considering whether § 3109a is "saved" from preemption under ERISA's saving clause include in their consideration the judicial gloss the Michigan courts have added to § 3109a. *See Auto Club Ass'n v. Health and Welfare Plans,* 961 F.2d at 590 n. 3, 592–93. *See also UNUM Life Ins.*

*Co. v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) (where the Court held that California's common law notice-prejudice rule, requiring insurers to show prejudice before they may deny coverage because of late notice under an insurance contract, is a rule that "regulates insurance" within the meaning of ERISA's saving clause and thus escapes ERISA preemption).

In sum, § 3109a of Michigan's no-fault law is "saved" under ERISA's saving clause. Accordingly, Michigan law, not federal law, governs this priority dispute.

**B. Priority**

█ Both the no-fault policy and the insured ERISA plan contain excess coverage clauses, which are recognized under Michigan law as coordination of benefits clauses.[4] *See Transamerica Ins. Co. of Amer. v. IBA Health and Life Assur. Co.,* 190 Mich.App. 190, 194–95, 475 N.W.2d 431, 433 (1991) (where the Court observed that excess coverage clauses that are conditioned upon the existence of other insurance are interpreted as coordination of benefit provisions). "Under Michigan law, where no-fault coverage and health cover-

---

**4.** The Progressive no-fault insurance policy provides:

Excess Coverage Option

1. If you have elected Personal Protection Insurance Benefits for allowable expenses as excess coverage, it is agreed that the primary source of protection will be all other medical insurance, health care benefit plans, or similar benefit insurance, self-insurance or plans available to you and relatives, including, but not limited to:

a. individual, blanket or group accident disability or hospitalization insurance, self-insurance, or plans;

b. medical or surgical reimbursement insurance or plans;

c. automobile or premises insurance affording medical expense benefits; and

d. Health Maintenance Organization (HMO) service plans.

You and relatives seeking benefits under this Part II excess coverage must first obtain benefits from all other available medical insurance, health care benefit plans, or similar benefit plans.

Coverage under this Part II is excluded to the extent that any elements of allowable expenses are paid, payable or required to be provided to, or on behalf of, you or a relative under the provisions of any medical insurance, health care benefit plans, or similar benefit insurance, self-insurance or plan. We will pay allowable expenses in excess of any valid limitations as to amount or duration of benefits which are not paid or payable under any other insurance, self-insurance or plans.

Plf's Ex. C at 20. The excess coverage clause in the insured ERISA plan provides:

EXCESS COVERAGE

No benefits are payable for Injury or Sickness for which there is other insurance providing medical payments or medical expense coverage, regardless of whether the other coverage is primary, excess or contingent. If We make payment on Your behalf. You agree to assign to Us any right You have against the other insurer.

Plf's Ex. D at 21.

age are coordinated, the health insurer is primarily liable for [the insured's] medical expenses." *American Med. Sec., Inc. v. Allstate Ins. Co.,* 597 N.W.2d at 246 (citing *Federal Kemper Ins. Co., Inc. v. Health Ins. Administration, Inc.,* 424 Mich. 537, 383 N.W.2d 590 (1986) and observing that the Michigan Supreme Court's subsequent decision in *Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.,* 443 Mich. 358, 388–89, 505 N.W.2d 820 (1993) overruled *Federal Kemper* in part and "carved an exception to the rule of law set out in *Federal Kemper*" when the plans at issue were self-funded as opposed to insured ERISA plans). *See also Smith v. Physicians Health Plan, Inc.,* 444 Mich. 743, 749, 514 N.W.2d 150, 153 (1994) (where the Court recognized the partial overruling of *Federal Kemper* in *Frederick & Herrud*).

This Court agrees with the Michigan Court of Appeals' analysis in *American Med. Sec., Inc. v. Allstate Ins. Co.* and reaches a similar conclusion in the identical priority dispute at issue here. The insured ERISA plan at issue here is primarily liable for Mr. Cooper's medical expenses resulting from his December 1997 automobile accident.[5]

## C. Recoupment

### 1. Initial $5,487.53 Payment

■ Progressive claims that it is entitled to recoupment of $42,126.00 which it paid out of priority on behalf of Mr. Cooper's medical expenses from the December 15, 1997 automobile accident. Defendants respond that Progressive is not entitled to recoupment of the initial $5,487.53 payment because this was money voluntarily paid with full knowledge of the facts and cannot be recovered merely because Progressive, at the time of the payment, was mistaken as to the law. This Court agrees with Defendants.

■ Progressive admits that it made this initial $5,487.53 payment based on a mistake of law. The fact that Progressive claims its payment was "based on misstatement of law" by Defendants' attorney does not relieve it from the general rule observed in *Montgomery Ward & Co. v. Williams,* 330 Mich. 275, 47 N.W.2d 607 (1951). In that case, the Michigan Supreme Court distinguished between mistakes of fact, where recoupment is allowed, and mistakes of law, where recoupment is not allowed, and observed: " 'The rule is well settled that, where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying.' " *Id.* at 285, 47 N.W.2d at 612 (quoting 53 A.L.R. 949). Progressive does not allege or submit proof that it made the payment based on a mistake of fact. It is not disputed that Defendants' attorney supplied Progressive with the Certificate of Insurance for the subject insured ERISA plan and Progressive does not claim it was mistaken as to this material fact. Nor is it disputed that Progressive made the payment voluntarily and without a reservation of the right to contest the priority issue. Accordingly, Progressive is not entitled to recoup the $5,487.53 initial payment it made to Defendants.

Progressive's reliance on *Kern v. City of Flint,* 125 Mich.App. 24, 335 N.W.2d 708 (1983) is misplaced. In *Kern,* the voluntary payment at issue was made under a mistake of fact, not law. After observing that recoupment is generally allowed in a mistake of fact scenario, the *Kern* Court then noted that, under equitable principles, an exception to the rule would apply to preclude recoupment when the person re-

---

**5.** The Court further observes that, although the no-fault and the insured ERISA plan each contain excess coverage clauses that ostensibly conflict, that conflict is resolved by an additional clause in the insured ERISA plan titled "Conformity with State Statutes." This clause provides that: "If a Policy provision does not conform to applicable provisions of State law, the Policy is hereby amended to comply with such law." Plf's Ex. D at 23. Application of that clause here means that, consistent with Michigan law, the insured ERISA plan will be primarily responsible for Mr. Cooper's medical expenses.

ceiving the money had changed his position in reliance on the payment. Here, a mistake of law is asserted and thus the *Kern* decision does nothing to advance Progressive's position.

### 2. Remaining Payments Made by Progressive

Progressive claims that, as of September 28, 1999, it paid a total of $42,126 in connection with Mr. Cooper's medical expenses and claims it is entitled to recoupment of the entire sum because it was paid out of priority. Defendants respond that the amount at issue here really is $42,126 less the $5,487.53 initial payment, for a total of $36,638.47. Progressive does not dispute this calculation. More importantly, Defendants argue that Progressive is not entitled to recoup this sum because: (1) Progressive failed to exhaust its administrative remedies; and (2) Progressive has not met its summary judgment burden because it must prove that the amounts it paid were "payable" under the insured ERISA plan. The Court addresses each of these arguments below, beginning with the exhaustion argument.

### a. Failure to Exhaust

■ Defendants' argument that Progressive must first exhaust the administrative remedies available under the insured ERISA plan before seeking recoupment was recently rejected by the Sixth Circuit. *See Prudential Property and Casualty Ins. v. Delfield Co. Group Health Plan,* 187 F.3d 637, 1999 WL 617992, *3 (6th Cir. Aug. 6, 1999) (unpublished). In *Delfield,* the Sixth Circuit decided a priority dispute between a no-fault insurer and a self-funded ERISA plan. Rejecting an argument similar to the one Defendants raise here, the court observed that the no-fault insurer was seeking recoupment under a common law claim, "not as a participant or beneficiary under § 502(a)(1)(B)" of ERISA which would require it to exhaust all administrative remedies before bringing suit. The *Delfield* Court further observed that the exhaustion requirement " 'is not applicable where, as here, a de-claratory judgment and recoupment action—not a claim for benefits under ERISA—is brought by a nonparticipant or a nonbeneficiary of an ERISA plan.' " *Id.* (quoting *Auto–Owners Ins. Co. v. Thorn Apple Valley,* 818 F.Supp. 1078, 1083 (W.D.Mich.1993), *rev'd on other grounds,* 31 F.3d 371 (6th Cir.1994)). Accordingly, because Progressive's seeks recoupment under Michigan common law, not as a beneficiary or participant of an ERISA plan, it is not required to comply with ERISA's exhaustion requirement.

### 3. Progressive's Lack of Documentation Supporting Recoupment Claim

Defendants assert that Progressive has not met its summary judgment burden on its recoupment claim because its has not presented any proof that the amounts it seeks to recoup were "payable" under the subject ERISA plan; i.e., that the alleged payments were in the amounts claimed and were for Mr. Cooper's medical expenses resulting from the December 1997 automobile accident. Progressive admitted at the hearing on this matter that it had failed to provide the documents supporting its recoupment claim and promised to do so immediately.

Other than the $5,487.53 initial payment it voluntarily made under a mistake of law, Progressive is entitled to recoup from Defendants all amounts which Progressive shows it paid for medical benefits under the no fault policy that are not in excess of Defendants' coverage for these expenses. However, because Progressive has not presented supporting documentation for the remaining $36,638.47 of its recoupment claim, its motion for summary judgment as to this portion of its claim is DENIED WITHOUT PREJUDICE. Progressive will be permitted to raise this issue again after it has submitted supporting documentation.

### D. Defendants' Counterclaim

In light of the above, Defendants' counterclaim asserting that it is entitled to

recoup the $1,440 it paid on behalf of Mr. Cooper's medical expenses because the amount was paid out of priority is DISMISSED.

## IV. Conclusion

For the foregoing reasons, Progressive's motion for summary judgment is GRANTED IN PART AND DENIED IN PART, and Defendants' counterclaim is DISMISSED.