Franklin D. MILLS and Eva Mills, Plaintiffs,

v.

EQUICREDIT CORPORATION, a foreign corporation; U.S. Bank National Association, Trustee, a foreign corporation; Fairbanks Capital, Corporation, a foreign corporation; Loan Servicing Center and Discount Mortgage Company d/b/a First Discount Mortgage, a Michigan corporation, jointly and severally, Defendants.

No. 03–70453.

United States District Court, E.D. Michigan, Southern Division.

Nov. 15, 2004.

Rochelle E. Guznack, Dearborn, MI, for Plaintiffs.

Joseph H. Hickey, Thomas M. Schehr, Dykema Gossett, Detroit, MI, David W. Warren, Joelson, Rosenberg, Marc N. Drasnin, Dixon & MacDonald, Farmington Hills, MI, for Defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BORMAN, District Judge.

### I. BACKGROUND

This is a consumer lending case in which Plaintiffs Franklin and Eva Mills allege that Defendants Equicredit Corporation ("EquiCredit"), First Discount Mortgage ("First Discount"), U.S. National Bank Association ("U.S.Bank"), Fairbanks Capital Corporation ("Fairbanks"), and Loan Servicing Center ("LSC") engaged in improper lending practices. The Complaint states that Franklin Mills, 79 years old and Eva Mills, 76 years old, who are of African American ethnicity, decided to refinance their home mortgage loan twice, first in 1999 and again in 2000, through mortgage broker First Discount and lender Equi-Credit.

Defendant First Discount is a mortgage broker, which provides advice and assistance to homeowners seeking credit, by arranging appraisals, obtaining credit information, and preparing loan applications and other documents. (Complaint at ¶ 25.)

In July or August of 1999, First Discount telephonically solicited Plaintiffs Franklin and Eva Mills to refinance their home mortgage loan and consolidate other debt into one monthly mortgage payment. (Complaint at ¶ 49.) Plaintiffs expressed interest in a refinancing arrangement, and First Discount set out to arrange a loan package for the Plaintiffs.

On August 12, 1999, Plaintiffs entered into a loan transaction with EquiCredit that was arranged by First Discount. Plaintiffs allege that the terms of the loan arranged by First Discount were substantially different than were previously discussed on the telephone in late July or early August. The Plaintiffs signed a promissory note for $85,000, which included $51,794.06 to pay off their previous mortgage, $886.90 for City of Detroit real estate taxes, $22,599 in disbursements to various creditors to pay off previously unsecured debts, and $2,922.54 in cash to Plaintiffs. Plaintiffs were also charged a direct broker fee of $5,500 that was rolled into the loan and an indirect broker fee of $1,700 in the form of a yield spread premium. The indirect broker fee was paid by EquiCredit to First Discount for getting Plaintiffs to agree to a high interest rate loan.[1] Other fees paid by Plaintiffs included a $250 appraisal fee, a $270 processing fee, and a $777.50 fee for miscellaneous expenses including recording the deed, transferring the taxes, obtaining title insurance, and obtaining a credit report. The loan was for a 10 year period. Plaintiffs were required to make a monthly payment of $874.32 and a balloon payment of $80,279.76 at the end of the 10 year period.

All of the terms, fees and conditions referenced above were disclosed in the transaction documents. The Mortgage Loan Origination Agreement that Plaintiffs signed on July 22, 1999 stated specifically that the retail price offered to Plaintiffs—their interest rate, total points and fees includes First Discount's compensation. (Exh. H, Defendants EquiCredit, Fairbanks and LSC's Brief ("Defendants' Brief")). Further, Mr. Mills testified that he never read the document or asked questions about it. (Dep. of F. Mills pg. 46, Exh. A, Defendants' Brief). The

---

1. Plaintiffs had substantial consumer debt and were paying 13% to 14% on a loan and

mortgage with Countrywide Mortgage. (Dep. of Mills, pg. 30, Exh. A to Defendants' Brief).

$5,500 broker fee charged by First Discount was disclosed in the HUD Settlement Statement. (Exh. I, Defendants' Brief). The Plaintiffs also signed a broker fee disclosure which disclosed First Discount's fees. (Exh. J, Defendants' Brief). Plaintiffs also signed a Mortgage Broker/Borrower Agreement which stated that First Discount would act as their agent in obtaining a lender, and disclosed First Discounts total compensation. (Exh. D, Defendants' Brief). Plaintiffs testified that they did not read these documents or ask any questions about the documents. (Dep. of F. Mills, pgs. 67–72, Exh. A, Defendants' Brief; Dep. of E. Mills, pgs. 58–62, Exh. G, Defendants' Brief).

On January 6, 2000, approximately five months after the first loan closing, Plaintiffs were again solicited telephonically by First Discount to refinance the loan on their home. Plaintiffs were interested in refinancing their home, and applied over the telephone for another home refinancing loan. The second loan closing took place on February 29, 2000. This loan package included a direct broker fee of $6,700 charged to the Plaintiffs and a second indirect broker fee of $2,033 in the form of a yield spread premium paid by EquiCredit to First Discount. The indirect broker fee was paid by Equicredit to First Discount because Plaintiffs agreed to a higher interest rate loan. The Plaintiffs agreed to pay an interest rate of 11.97%. (Complaint at ¶ 65.) The second loan refinancing included a $270 "processing fee" and $759.50 in miscellaneous fees. (Complaint at ¶¶ 67–68.). Again, all of the terms, fees and conditions referenced above were disclosed in mostly identical transaction documents and the HUD settlement statement. (See Exhibits E, J, K, L and M of Defendants' Brief). Again, Plaintiffs testified that they did not read these documents or ask any questions about the documents. (Dep. of F. Mills, pgs. 119–140, Exh. A, Defendants' Brief; Dep. of E. Mills, pgs. 80–118, Exh. G, Defendants' Brief).

On January 6, 2003, Plaintiffs Franklin and Eva Mills filed the present lawsuit in Wayne County, Michigan Circuit Court against EquiCredit, First Discount, U.S. Bank, Fairbanks, and LSC, alleging eleven causes of action:

Count I—Federal Real Estate Settlement Procedures Act ("RESPA")—as to Equicredit and First Discount

Count II—Michigan Credit Services Protection Act ("CSPA") and Michigan Consumer Protection Act—Claims Regarding Broker Fee Agreements—as to Equicredit and First Discount

Count III—Federal Equal Credit Opportunity Act ("ECOA")—as to Equicredit

Count IV—Federal Fair Housing Act ("FHA")—as to Equicredit

Count V—Michigan Consumer Protection Act—as to Equicredit

Count VI—Federal Home Ownership and Equity Protection Act ("HOEPA")—as to Equicredit

Count VII—Federal Truth in Lending Act ("TILA")—as to Equicredit and U.S. Bank

Count VIII—Fraud, Michigan Consumer Protection Act, and Breach of Fiduciary Duty—as to Equicredit and First Discount

Count IX—Breach of Contract—as to Equicredit and Fairbanks

Count X—Fraud and Misrepresentation—as to Equicredit, U.S. Bank, and First Discount

Count XI—Intentional Infliction of Emotional Distress—All Defendants

Defendant U.S. Bank is the trustee for several pools of mortgage backed securities, and was the trustee of Plaintiffs' loans and was the legal owner of the Plaintiffs' loans. On April 1, 2002, U.S. Bank sold

the Plaintiffs' loans to Defendant Fairbanks. Because U.S. Bank has not been served, it is not a party to this suit.

On February 3, 2003, Defendants removed this case from Wayne County, Michigan Circuit Court to this Court. On March 13, 2003, Defendants EquiCredit, Fairbanks, and LSC filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On November 24, 2003 the Court granted Defendants' Partial Motion to Dismiss. The following counts remain:

Count VI (Home Ownership and Equity Protection Act 15 U.S.C. § § 1602 and 1939) as to EquiCredit;

Count IX (Breach of Contract) as to EquiCredit and Fairbanks;

Count X (Fraud and Misrepresentation) as to EquiCredit and First Discount; and

Count XI (Intentional Infliction of Emotional Distress) as to EquiCredit, First Discount, Fairbanks, and LSC.

On July 19, 2004 Defendants EquiCredit, Fairbanks and LSC filed a Motion for Summary Judgment on the remaining counts. Defendant First Discount also filed a Motion for Summary Judgment on remaining counts. First Discount filed a Concurrence with the Court on July 29, 2004 stating that it adopts Defendants EquiCredit, Fairbanks and LSC's facts and arguments into its brief. The Plaintiffs filed a Response to the Motions on October 26, 2004. Plaintiffs' Response was filed more than two months after it was due, just one day before oral argument, and was stricken from the record by the Court.[2] Oral argument was held October 27, 2004. At oral argument, Plaintiffs were allowed to fully present their response orally, and the Court has included that presentation in reaching the instant decision.

## ANALYSIS

### A. Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed.R.Civ.P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed.1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conversely, where a

---

2. Plaintiffs' Response was due on August 20, 2004.

reasonable jury could not find for the non-moving party, there is no genuine issue of material fact for trial. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.,* 106 F.3d 135, 145 (6th Cir.1997); *see also Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

3.  HOEPPA, 15 U.S.C. § 1639(a),(b) provides that certain disclosures are required to be given to borrower for each mortgage referred to in 15 U.S.C. § 1639(aa). 15 U.S.C. § 1639(aa) provides in pertinent part:

    A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if -

## B. Plaintiffs' HOEPPA Claim

Plaintiffs' seek to rescind their second loan under HOEPA because EquiCredit failed to provide them with 3–day advance disclosures as required by HOEPPA, 15 U.S.C. § 1639(a),(b). (Plaintiffs' Complaint ¶¶ 113, 116). This disclosure is required by HOEPPA when the points and fees charged to a borrower exceeds 8 percent of the net loan amount as statutorily defined. 15 U.S.C. §§ 1639(a), 1602(aa).[3] Plaintiffs include the addition of the yield spread premiums in determining that the points and fees exceeded 8 percent.[4] (Complaint ¶ 115).

Defendants argue that the yield spread premiums may not be counted toward the 8 percent threshold. According to Defendants, the points and fees were 7.886% of the net loan value without the inclusion of the yield spread premium. (Defendants' Brief, Exh. M).

Defendants cites *In re Mourer,* 309 B.R. 502 (W.D.Mich.2004) for the proposition that the yield spread premium should not be included in the HOEPA calculation. The District Court in *Mourer* reversed the Bankruptcy Court's determination that the yield spread premium should be included in the HOEPA calculation. The Court stated:

> The bankruptcy court's holding that the YSP is a fee that must be included in the calculation of the 8% trigger of 12 C.F.R. § 226.32(a)(1)(ii) flies in the face

(B) the total points and fees payable by the consumer at or before closing will exceed greater of -
    (i) 8 percent of the total loan amount; or
    (ii) $400.
15 U.S.C. § 1602(aa).

4.  It should be noted that Plaintiffs did not pay any upfront money at either closing for the transactions. (Exh. J, I, Defendants' Brief).

of that very provision's express inclusion of 'fees payable by the consumer at or before loan closing.' There is no evidence or even contention that the Mourers paid the YSP at or before closing. The YSP was paid by EquiCredit to Cascade at the time of closing, but to the extent this obligation was payable by the Mourers, it was payable in the form of a higher interest rate, not at or before the closing, but over the course of the loan. It necessarily follows that the YSP is not properly included in the calculation of the 8% trigger. The bankruptcy court's contrary conclusion is not supported by any case law authority. Nor have the Mourers identified any. *Id.* at 505.

■ Similarly here, Plaintiffs have brought forth no evidence or contention that they paid the yield spread premium at or before closing. Further, Plaintiffs have provided no legal authority to support the position that the yield spread premium should be included in the calculation of the 8 percent trigger. Accordingly, the Court holds that pursuant to relevant case law and the plain language of 12 C.F.R. § 226.32(a)(1)(ii) the yield spread premium should not be included in the 8 percent trigger calculation. Therefore, the Court grants EquiCredit's Motion for Summary Judgment of the HOEPA claim.

## C. Plaintiffs Breach of Contract Claim

■ Plaintiffs first allege that EquiCredit, Fairbanks and LSC breached their contractual obligations by wrongly placing homeowners insurance on their property. For the reasons that follow, the Court grants summary judgment for Defendants on this claim. The terms of the Mortgage provide that Plaintiffs are obligated to provide EquiCredit all receipts of paid premiums and renewal notices upon EquiCredit's request. (Exhibit R ¶¶ 5,7). If

Plaintiffs' failed to maintain sufficient insurance on the property, EquiCredit had the right to purchase insurance for the property and to charge the cost to Plaintiffs. (*Id.*). EquiCredit states that after receiving notice Plaintiffs' homeowners insurance had lapsed[5], it purchased the insurance and notified Plaintiffs that they were responsible for the $1,163 cost. Plaintiffs testified that they had homeowners insurance through State Farm and that they requested State Farm send a letter to EquiCredit. (Dep. of Franklin Mills pg. 149). However, Plaintiffs have brought forth no evidence to support this claim. EquiCredit states that it never received the letter, and Plaintiffs do not have a copy of the letter. Further, Plaintiffs have brought forth no evidence to demonstrate that they provided EquiCredit with the proper proof of insurance as required by the mortgage. Accordingly, the Court grants Summary Judgment on this count because Plaintiffs have not brought forth sufficient evidence to create a question of fact.

■ Plaintiffs also allege that Defendants' misapplied its payments. Defendants have attached their payment records as Exhibit O and Plaintiffs have not brought forth any evidence to dispute the records. Defendants further state that the doctrines of payment and waiver bar Plaintiffs' claims. Plaintiffs voluntarily paid off their mortgage loan with Fairbanks and have not brought forth evidence showing a protest or reservation of rights that the payoff amounts were wrong. (Dep. of F. Mills pg. 260, Exh. A, Defendants' Brief; Dep. of E. Mills, pg. 285, Exh. G, Defendants' Brief). Defendants argue that it is well settled that where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was

---

**5.** See Exhibit N to Defendants Motion.

made under a misapprehension of the legal rights and obligations of the person paying. *Progressive Michigan Ins. Co. v. United Wisconsin Life Ins. Co.,* 84 F.Supp.2d 848, 854 (E.D.Mich.2000) (quoting *Montgomery Ward & Co. v. Williams,* 330 Mich. 275, 285, 47 N.W.2d 607 (1951)). The Plaintiffs have not argued to the contrary. Accordingly, the Court grants Summary Judgment on this claim for the reasons explained above.

### D. Plaintiffs' Common Law Fraud and Misrepresentation Claim

The elements of common law fraud in Michigan are as follows:

> (1) That defendant made a material representation; (2) that was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 247 N.W.2d 813 (1976). Each of the facts above must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to recovery. *Id.* The burden rests on plaintiffs. *Id.* Fraud will not be presumed, but must be proved by clear, satisfactory and convincing evidence. *Id.*

It is undisputed that Plaintiffs had no communications with EquiCredit before closing the transactions. However, Plaintiffs claim that First Discount's misrepresentations during the solicitation of the loans should be attributed to EquiCredit because First Discount was EquiCredit's agent. The Court finds that Plaintiffs have brought forth no evidence to support a finding of agency between First Discount and EquiCredit.

Agency is defined as "a fiduciary relationship created by express or implied contract or by law, in which one party (the agent) may act on behalf of another party (the principal) and bind that other party by actions or words." *Breighner v. Michigan High School Athletic Assoc.,* 255 Mich. App. 567, 662 N.W.2d 413 (2003).

In this case, First Discount and EquiCredit's agreement which set forth the requirements for First Discount's submission of a loan application expressly stated that First Discount was not an agent of EquiCredit. (Exh. F, § 6.1). Plaintiffs have testified that they had no reason to believe that First Discount was an agent of EquiCredit. (Dep. of F. Mills pgs 220–221, Exh. A to Defendants' Brief; Dep. of E. Mills pgs. 91–92, Exh. G to Defendants' Brief). Plaintiffs were never told that First Discount was EquiCredit's agent. (Dep. of E. Mills pgs. 91–92, Exh. G to Defendants' Brief). Plaintiffs also signed a Mortgage Broker/Borrower Agreement which stated that First Discount would act as their agent in obtaining a lender. (Exh. D, Defendants' Brief). Plaintiffs have brought forth no evidence to support their claim that First Discount was EquiCredit's agent. Accordingly, Summary Judgment is granted on this count as to EquiCredit.

Plaintiffs allege that First Discount made the following misrepresentations:

> A. the failure to disclose to them that First Discount was being engaged substantial broker fees and yield spread premiums from both Plaintiffs and EquiCredit;
>
> B. the failure to disclose to them that their request for a loan refinancing was being rejected, and the reasons it was being rejected;
>
> C. the representations made to them at the loan closings that the loans were beneficial to them;

D. failing to clearly explain the Equi-Credit's motives in requiring Plaintiffs to borrow additional sums to pay taxes so that EquiCredit could have a first mortgage loan and thereby evade Michigan usury laws;

E. failing to explain that the August 12, 1999 loan was a ten-year balloon and the meaning of a balloon note; and

F. failing to disclose that the interest rate offered to Plaintiffs was not the most favorable rate they could obtain.

Complaint ¶ 130.

Defendants and First Discount argue that Plaintiffs have not identified in their complaint or deposition any affirmative misrepresentations by First Discount. Plaintiffs stated in their response to an interrogatory the following:

Question 6. With respect to each allegedly fraudulent statement made by First Discount,

(a) identify when the statement was made;

(b) identify where the statement was made;

(c) state the content of each statement;

(d) identify the person who allegedly made the fraudulent statement and

(e) identify the person whom the fraudulent statement was made.

Answer: Those statements as set forth in the complaint made by First Discount commenced just prior to submission of an application for the first refinancing transaction through closing of the first transaction and commenced again when we were contacted by First Discount to refinance again approximately 5 months later and continued until closing of the second transaction. I cannot recall the exact dates of the conversations or statements, but they were all made within the period just prior to submission of the application through closing of the respective transactions. I was led to believe I was applying for a lost cost loan at the lowest available interest rate, and I was not told that the first loan was a ten year balloon or the meaning of a 'balloon.' It is anticipated that additional supporting facts and evidence will come to light during discovery.

(Plaintiffs' Answers to Interrogatories, Exh. M to First Discount's Brief).

The Court finds that there is no evidence of any specific misrepresentations made by Defendants. It is clear Plaintiffs did not understand the terms and conditions of the documents. However, the Court finds that Plaintiffs' have not shown this confusion was caused by any misrepresentations by Defendants. Plaintiffs have not identified any specific false statements made by First Discount. Further, the Court finds that Plaintiffs have not demonstrated detrimental reliance because they executed written documents disclosing all of the items about which they claim confusion. As the Sixth Circuit has stated:

Reliance on oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement. *See 3 P.M., Inc. v. Basic Four Corp.,* 591 F.Supp. 1350, 1366 (E.D.Mich.1984) (interpreting Michigan law and holding that a plaintiff may not reasonably rely on prior oral statements that directly contradict the terms of the written contract). Cook's signing the franchise agreement precludes his reasonable reliance on the prior representations.

*Cook v. Little Caesar Enterprises, Inc.,* 210 F.3d 653, 658 (6th Cir.2000).

At each closing, Plaintiffs signed documents disclosing all of the terms of the transaction, including the broker fees paid to First Discount. Plaintiffs have acknowledged that they never read any of the documents that they signed, and that

they never asked any questions about the documents they signed. Defendants contend that under Michigan law, the Plaintiffs are precluded from claiming reasonable reliance on the prior representations. The Court agrees with Defendants. The Court also finds that Plaintiffs failure to read the documents they signed or ask questions estops them from avoiding the language of such documents on the grounds that they were ignorant of their provisions. According to the Michigan Supreme Court, if a party to a contract does not understand its terms, it "has a duty to inquire about its contents." *Scholz v. Montgomery Ward & Co.*, 437 Mich. 83, 92, 468 N.W.2d 845 (1991) (quoting *Sponseller v. Kimball*, 246 Mich. 255, 260, 224 N.W. 359 (1929)). There is no dispute that the terms and conditions of the loan and the fees were disclosed in the documents.

At oral argument, Plaintiffs' counsel argued that Plaintiffs were illiterate and unable to read the documents. The Court rejects this arguments because there is no evidence to support it. In fact, Eva Mills stated in her deposition that she attended Morris Brown college and Reid Business college and even took accounting and finance courses. (Dep. of E. Mills, pg. 7). Further, it was represented at oral argument that Franklin Mills attended two years of college and worked as a substitute teacher. Accordingly for the reasons stated above, Summary Judgment is granted for EquiCredit and First Discount on Plaintiffs' Fraud claim.

### E. Plaintiffs Claim of Intentional Infliction of Emotional Distress

■ The Court grants Summary Judgment for Defendants on Plaintiffs' Intentional Infliction of Emotional Distress claim. The Court finds that emotional distress damages are not appropriate because the relationship between Plaintiffs and EquiCredit is contractual, and there is no evidence that the parties contemplated that they would be responsible for emotional damages in the event of a breach. *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 417, 295 N.W.2d 50 (1980). Further, the Court finds that where parties execute an express contract, a tort claim based on a failure to perform obligations that are covered by the express contract is inappropriate. *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.*, 454 Mich. 65, 84, 559 N.W.2d 647 (1997). Michigan courts have held that the "threshold inquiry" in determining whether a tort claim is allowed when there is an express contract is whether plaintiff alleges a violation of a legal duty separate and distinct from the contractual obligation. *Id.* Plaintiffs have not brought forth specific facts demonstrating that Defendants violated a duty that is separate from their contractual obligations.

Further, Plaintiffs cannot establish a prima facie case for Intentional Infliction of Emotional Distress. The elements of a prima facie claim for Intentional Infliction of Emotional Distress are as follows:

(1) extreme and outrageous conduct;

(2) intent or recklessness;

(3) causation; and

(4) severe emotional distress.

*Graham v. Ford*, 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999). Plaintiffs have not demonstrated any of the elements for Intentional Infliction of Emotional Distress. Plaintiffs have not shown that Defendants conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 603, 374 N.W.2d 905 (1985). Plaintiffs have not shown that Defendants engaged in extreme and outrageous behavior or that they have suffered severe emotional distress. Accordingly, Summary Judgment is

granted on Plaintiffs Intentional Infliction of Emotional Distress claim.

## CONCLUSION

For the reasons set forth above, the Court grants Defendants' Summary Judgment Motions in their entirety.

**SO ORDERED.**