# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL SIMONIE,

        Plaintiff-Appellee,

v

LOWELL COTE,

        Defendant-Appellant,

and

METROPOLITAN GROUP PROPERTY AND
CASUALTY INSURANCE COMPANY,

        Defendant.

UNPUBLISHED
December 26, 2017

No. 333292
Wayne Circuit Court
LC No. 14-004088-NI

Before: BORRELLO, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. *(concurring)*.

I concur in the result reached by the majority, but I write separately because I am concerned that the majority inappropriately conflates the several distinct possible avenues to liability available under the Owners Liability Statute, MCL 257.401, and relevant common law. I hope to provide more clarification, and I further hope our Supreme Court might see fit to provide further guidance.

Most of the facts in this matter are undisputed. Plaintiff was injured in a hit-and-run vehicle accident when an unidentified person only ever known as "Kathy" drove defendant's vehicle into plaintiff's vehicle. No testimony or evidence suggested that defendant was in the vehicle at the time, and for whatever reason, the driver has not been found. Relevant to the instant appeal, plaintiff brought a claim against defendant pursuant to the Owners Liability Statute, MCL 257.401. Defendant does not contest his ownership of the vehicle or, at least for purposes of the motion for summary disposition, the fact of the accident. Rather, he argues that "Kathy" took his vehicle without his knowledge or permission, absolving him of liability under the statute.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v*

-1-

*Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. Likewise, this Court reviews the interpretation of statutes de novo and must give effect to the intent of the legislature without further construction if that intent is clearly expressed. *Morales v Auto-Owners Ins Co*, 469 Mich 487, 490; 672 NW2d 849 (2003). "The court is not permitted to assess credibility, or to determine facts on a motion for summary judgment." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). Summary dispositions are reviewed on the basis of the evidence that had been presented to the trial court at the time the motion is decided, not on the basis of any evidence presented later. *Peña v Ingham Co Road Comm*, 255 Mich App 299, 313 n 4; 660 NW2d 351 (2003). Consequently, the jury's subsequent verdict in favor of plaintiff is immaterial to whether the trial court properly denied summary disposition. See *Paul v Lee*, 455 Mich 204, 216-217; 568 NW2d 510 (1997) (overruled on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999)).

In greater detail than discussed by the majority, according to defendant, he met "Kathy" when she approached him in a restaurant and invited him to attend a party. He accepted the invitation and drove her to an address with which he was unfamiliar, following her directions. Defendant estimated that they arrived sometime between 7:00 and 8:00 p.m., although he emphasized that he was uncertain of the exact time and could only "give you the ballpark." According to the traffic crash report, the accident at issue occurred at 8:00 p.m. The party proved to be a birthday party and "Kathy" immediately abandoned him. Defendant testified that when they parked, he left his keys in the center console of his vehicle, and "Kathy" "seen where I put them when I got out of the car." Defendant talked to people at the party and eventually fell asleep; he woke up at around 2:30 or 3:00 a.m., whereupon he discovered that "Kathy" and his vehicle were both missing. He stated that at no time did he tell or imply to "Kathy" that she may use his car, nor would he have if she had asked. He decided not to deal with the missing vehicle at that time because he was too tired, so he called a friend to pick him up and walked several blocks to a major street to be easy to find.

Defendant testified that he intended to report the vehicle stolen in the morning, but when he woke up, he had a short voicemail from a person he believed to have been "Kathy", from an unknown number, advising him where his vehicle was located. He had no idea how "Kathy" might have gotten his phone number, although he speculated that someone at the party might have given it to her, it was his business phone and listed on his business card, and he had the same phone number for 25 years. Upon retrieving the vehicle, he immediately observed that there was a "little dent, no bigger than a softball, on the front bumper," almost "dead center," but the airbags had not deployed and given the age and condition of the vehicle, he elected not to claim it with his insurer. He opined that he was not worried about it, and "[h]ow somebody can get injured off that no bigger than a softball is beyond me." He did not retain the voicemail, noting that he receives "millions" of voicemails.

Defendant testified that he spent a considerable amount of effort driving "around the neighborhood trying to remember what the house looked like," as well as trying to track down either "Kathy" or the one other person he recognized from the party. He indicated that he still owned the vehicle and had never bothered repairing the dent. He did, however, inform the

-2-

officer who investigated the crash that the vehicle had been taken while he was at a party and he did not know the driver. Plaintiff's description of the person he saw driving defendant's vehicle is consistent with defendant's description of "Kathy", and at no point did plaintiff's testimony suggest that anyone else was present in defendant's vehicle.

Plaintiff's theory of liability in this matter is the Owner's Liability Statute, MCL 257.401(1), which provides:

> This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a violation of this act by the owner or operator of a motor vehicle or his or her agent or servant. The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge. It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family.

As plaintiff correctly observes, this statute can "impose[] liability upon the owner of a motor vehicle without regard to whether the owner was guilty of negligence." *Tahash v Flint Dodge Co*, 399 Mich 421, 425; 249 NW2d 110 (1976). The parties do not dispute that the relevant portion for purposes of this appeal is the third sentence, under which defendant "is not liable unless the motor vehicle is being driven with [his] express or implied consent or knowledge." However, additionally, although the presumption of knowledge and consent provided by statute is inapplicable because defendant's vehicle was not being driven by a member of his family, a rebuttable presumption of consent arises by operation of common law. See *Fout v Dietz*, 401 Mich 403, 405-406, 405 n 2; 258 NW2d 53 (1977); *Bieszck v Avis Rent-A-Car System, Inc*, 459 Mich 9, 18-19; 583 NW2d 691 (1998).

Consequently, for the purposes of the instant case, there are *four* independent possible ways to establish liability. First, the trier of fact could affirmatively find that defendant granted "Kathy" express consent to drive his vehicle. Second, the trier of fact could affirmatively find that defendant granted "Kathy" implied consent to drive his vehicle. Third, the trier of fact could affirmatively find that defendant knew that "Kathy" was driving his vehicle. Fourth, the trier of fact could find that defendant failed to rebut the common-law presumption that he granted "Kathy" consent to drive his vehicle. As noted, because there is no indication that "Kathy" is a member of defendant's family, the statutory presumption in the last sentence of the statute is inapplicable.

As an initial matter, a trier of fact may choose to reject any evidence if it wishes, but it cannot invent evidence. See *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883) and *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996). I take great exception to the majority's implication that defendant might have been present in his vehicle at the time of the accident. It is *possible*, insofar as there are no laws of physics precluding such a possibility, but as noted, plaintiff provided a description of the driver consistent with defendant's

description of "Kathy", as well as *no* indication that anyone else was present in defendant's vehicle at the time. Although the traffic crash report and defendant's timetable seem to disagree, the evidence is uncontested that defendant's timetable was approximate and that he lost track of "Kathy" almost immediately upon arriving at the party. Even disregarding defendant's testimony altogether, there is simply *nothing* in the record to indicate that "Kathy" was anything but alone in defendant's vehicle at the time of the accident. To suggest otherwise necessitates sheer speculation.

Likewise, there is absolutely no evidence in the record that defendant granted "Kathy" express consent to drive his vehicle. While defendant's credibility becomes relevant to the common-law presumption, at a summary disposition stage of proceedings we are otherwise not permitted to evaluate witness credibility, even if the witness is interested in the outcome of the matter. The evidence is unequivocal that defendant did not give "Kathy" consent to drive his vehicle, and again, even disregarding defendant's testimony altogether simply leaves no evidence at all. A finding of express consent would require either the trier of fact to engage in speculation or to outright invent evidence that does not exist.

Whether defendant *knew* that "Kathy" was driving his vehicle is, of course, distinct from whether he *consented* to "Kathy" driving his vehicle. The statute unambiguously provides that defendant could be liable if he merely was aware that she was driving it. We are required to follow the law as it is written. Certainly, the evidence suggests that when defendant became aware that his vehicle was gone, he may have had some idea of who had taken it. If nothing else, deducing that "Kathy" was the thief would not have been difficult. Furthermore, the statute suggests that liability does not depend on the owner knowing the identity of the operator, merely that it is in fact being operated. However, my reading of the statute's use of present tense in the third sentence is that the owner must know that the vehicle is being driven at the time the accident occurs. Whether defendant *eventually* became aware that his vehicle had been stolen is insufficient. The evidence, again, seems lacking to me: I do not find the discrepancy between the timetable of the crash report and defendant's estimate of when he arrived at the party to illuminate anything, and otherwise there is no evidence that defendant paid any attention to his vehicle at all until he decided to leave the party. I find no basis for finding a material question of fact at a summary disposition stage, as to whether defendant knew his vehicle was being driven at the time of the accident.

Most of the argument in this matter pertains to the propriety of a finding of *implied* consent. However, all that the evidence and argument establishes is that defendant was negligent. Indeed, it is clear that defendant's act of intentionally and knowingly leaving the keys to a vehicle inside the vehicle, especially in front of a stranger and in an unknown location, is without any doubt foolish. Plaintiff provides ample case law tending to establish *negligence*, but bluntly, none is needed, because that conclusion is blindingly obvious. It is also completely irrelevant, because the issue in this matter is *consent*, not negligence. Clearly, consent can possibly be implied in the absence of any explicit expression to the contrary. However, plaintiff's argument, in a nutshell, appears to be primarily that defendant's indisputable negligence establishes that implied consent. I find that argument outrageous and irresponsible.

Negligence may arguably constitute implied consent to whatever consequences are impersonally dictated by the cold and unavoidable operation of the laws of physics. It does *not*

-4-

constitute consent to an affirmative act of misconduct knowingly committed by another person, irrespective of whether that misconduct was easier to perpetrate because of the negligence. Put another way, stupidity is not consent to being the victim of a crime. Leaving a window open is implied consent to one's possessions being destroyed by rain and wind, not to one's possessions being stolen by passers-by. As a general matter, absent extraordinary circumstances, one is not obligated to go through life expecting others to commit crimes against them as a matter of course. See *Heitsch v Hampton*, 167 Mich App 629, 634-636; 423 NW2d 297 (1988); *Rogalski v Tavernier*, 208 Mich App 302, 306-307; 527 NW2d 73 (1995); *People v Schaefer*, 473 Mich 418, 437-438; 703 NW2d 774 (2005). I agree wholeheartedly that defendant's conduct was profoundly stupid. To deduce *consent* from that would essentially be to conclude that any victim of a crime who could conceivably have done more to prevent it deserves whatever happens to them, which again would make a mockery of the entire legal system.

I do not accept that negligence alone constitutes any kind of consent to being the victim of a crime, and there is simply no other evidence that would establish a finding of any kind of consent. I also find no evidence from which defendant could be found to have known that his vehicle was being driven at the time of the accident. I find the majority's conflation of the various issues somewhat disturbing. However, I do agree with the majority, to the extent it does not engage in such conflation, that the common-law presumption of consent applies and defendant's testimony is insufficient to warrant taking that issue from the jury.

As noted, the common-law presumption arises purely by operation of law. That presumption is not, however, conclusive, and it does not shift the ultimate burden of proof. *Bieszck*, 459 Mich at 18-19. In the instant context, such common-law presumptions must be rebutted by "positive, unequivocal, strong and credible evidence." *Id*. at 19 (quotation omitted). Our Supreme Court has "held that uncontradicted evidence given by defendants alone is sufficiently clear, positive and credible to rebut the presumption and justify a directed verdict for the defendant" when defining "[w]hat constitutes clear, positive and credible evidence[.]" *Krisher v Duff*, 331 Mich 699, 710; 50 NW2d 332 (1951). Such unequivocal testimony may nevertheless be insufficient if it comes from a witness who is not disinterested and whose credibility has been undermined in some way. *Id*. at 709-710. However, such undermining requires some basis, such as the testimony being contrary to established evidence, inherently improbable, self-contradictory, or seemingly the product of faulty or lapsed memory. *Wingett v Moore*, 308 Mich 158, 161; 13 NW2d 244 (1944), cited by *Krisher*, 331 Mich at 709.

Defendant's testimony is undisputedly positive, unequivocal, and strong; that is of course ordinarily sufficient in evaluating a motion for summary disposition, where we are not permitted to evaluate credibility. However, the credibility of defendant's testimony is directly relevant to the issue of the presumption. If "the evidence is not clear, positive and credible," then "the issue of whether or not the presumption of consent has been overcome should be submitted to the jury." *Krisher*, 331 Mich at 709. The irony is not lost upon me that we are therefore seemingly called upon to evaluate defendant's credibility at precisely the stage of proceedings in which we are not permitted to evaluate a witness's credibility. However, there are circumstances in which a court may do so if testimony defies known laws of physics or is somewhat more vaguely "patently incredible" or "inherently implausible." See *People v Lemmon*, 456 Mich 625, 643-645; 576 NW2d 129 (1998). Judges are not to sit as a "thirteenth juror," and precisely what constitutes "patently incredible" or "inherently implausible" testimony is not amenable to

"[f]ormulaic pronouncements . . . regarding when the 'mystic borderline' is crossed between credibility issues that must remain with the jury and a court's authority to overturn that finding." *Id*. at 643-645 (internal quotations omitted). Fortunately, the issue before us is a more subtle one: not whether defendant's testimony *is* credible, but whether enough doubt is cast upon it to warrant submitting the question of its credibility to the trier of fact.

To emphasize the point, I again note that this issue is completely distinct from the issue of implied consent. The issue is not whether the evidence at face value could lead to a conclusion of implied consent, but rather whether the evidence suggests that there is any question of whether the jury might reasonably decline to take defendant's testimony at face value. A finding that defendant gave implied consent would be an affirmative conclusion that the trier of fact must draw from the evidence, which it may not do if, as I find, there is "a total want of evidence upon any essential point." *Howard*, 50 Mich at 243. If the jury chose to disbelieve defendant, it could not construct evidence supporting a conclusion of implied consent. However, the common-law presumption arises at common law and must be affirmatively refuted; a want of evidence so refuting the presumption would mandate a finding of consent by operation of law rather than by affirmative evidence.

I emphasize further that, if I apprehend the majority's opinion correctly, this Court is making no determination of whether defendant was actually truthful. We may not make that determination. Furthermore, I do not think that foolish behavior, even outrageously foolish behavior, by itself is necessarily sufficient to cast doubt on a witness's credibility. The fact that a witness is not disinterested is likewise insufficient by itself to undermine it, but such interest makes the manner of the witness's testimony highly relevant to the witness's credibility. *Krisher*, 331 Mich at 708-709. Defendant is clearly an interested party, and when viewed in context, I think his conduct sufficiently of concern to warrant submission of its credibility to the jury. In particular, I find especially suspicious defendant's decision not to report the theft to the police promptly, the fact that he supposedly walked to a nearby major street yet was curiously unable to locate the party house again, the fact that "Kathy" somehow obtained defendant's phone number, and defendant's decision to delete her message.[1] While I believe judges should not "Monday morning quarterback" from the comfort of our chambers decisions made by people whose life experience clearly differ greatly from our own, such extreme disregard from an interested witness is ample basis to submit defendant's credibility to the jury.

I would not hold that defendant lied; nothing about his testimony rises to the level of impossibility or implausibility that the courts should take it from the jury altogether. I would hold nothing about defendant's truthfulness at all. Nevertheless, under the circumstances, his credibility was a matter for the jury, and his credibility was the lynchpin of whether he could refute the presumption of consent. Otherwise, I would only hold that negligence does not

---

[1] Had defendant's vehicle suffered significant damage, his failure to report it to his insurance company might be suspect, but in the absence of any evidence that his vehicle *did* suffer any significant damage, I think foregoing such a report to be unremarkable considering a potential rise in premium rates with such a report.

constitute implied consent to being the victim of a crime, and I find any suggestion to the contrary implied by the majority to be highly disturbing. The issues, being distinct, are entirely compatible with each other. I therefore concur in the result reached by the majority.

/s/ Amy Ronayne Krause